In the Matter of the Application of FRED E. DEAN, Respondent, for a Writ of Mandamus.

WILLIAM C. BELL et al., as Trustees of the Village of Wilson, Appellants.

Villages — constitutional law — when subsequent statute does not legalize invalid certificates of indebtedness issued by village trustees — private or local bill invalid when purpose not fairly expressed by title — power of legislature to cure defects does not dispense with constitutional requirements.

1. A certificate of indebtedness purporting to be issued by the trustees of a village under section 166 of the Village Law (Cons. Laws, ch. 64), which provides that after the time for paying assessments has expired " certificates of indebtedness may be issued for the aggregate amount of such assessments then remaining unpaid," is invalid where there is no other basis for such certificate than an invalid contract and invalid assessments, and it neither represents nor constitutes any legal claim against the village.

2. A statute, thereafter enacted (L. 1919, ch. 399), authorizing the village authorities to borrow money and " pay off and discharge certificates of indebtedness and interest thereon, issued pursuant to the village law," does not legalize such a certificate nor call for steps to provide for its payment. The words " issued pursuant to the village law " plainly mean certificates validly issued for a proper and recognized consideration, and the certificate in question cannot be described as one so issued but rather as one issued in disregard and defiance of

1

its provisions. The plain meaning of the statute cannot be changed by extrinsic evidence or unjustifiable interpretation.

3. The act, described in the title as one " to authorize and empower the board of trustees of the village of Wilson to borrow money for discharging certain debts," is a " private or local bill " within the meaning of section 16 of article 3 of the State Constitution, and if construed to deal with claims utterly lacking in any feature of legal obligation and which at most constitute equitable claims which might be made the basis for remedial legislation, the subject and purpose of the bill were not fairly " expressed in the title."

4. The power of the legislature to cure the omission of and dispense with the requirement for statutory steps in the making of a municipal contract or in the levying of assessments does not dispense with the constitutional requirement that the act by which it is to be done shall fairly indicate the existence of the purpose. (*Economic P. & C. Co. v. City of Buffalo*, 195 N. Y. 286, 297, followed.)

*Matter of Dean*, 191 App. Div. 809, reversed.

(Argued October 6, 1920; decided November 16, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 20, 1920, which reversed an order of Special Term denying a motion for a peremptory writ of mandamus and granted said motion.

The facts, so far as material, are stated in the opinion.

*Abner T. Hopkins* for appellants.

*Robert J. Moore* for respondent. Petitioner's claim against the village of Wilson is a valid one and his right to enforce payment by a writ of mandamus is based upon chapter 399 of the Laws of 1919. (*Matter of City of Niagara Falls* v. *P. S. Comm.*, 229 N. Y. 333; *People ex rel. City of Rochester* v. *Briggs*, 50 N. Y. 553; *MacMullen* v. *City of Middletown*, 187 N. Y. 37; *Atkin* v. *Kansas*, 191 U. S. 207; *City of Worcester* v. *W. C. S. Ry. Co.*, 196 U. S. 539; *Barnes* v. *District of Columbia*, 91 U. S. 540.) Mandatory statutes directing municipalities to pay claims not legally binding on them, but founded in justice and equity, are valid legislative enactments. (*Town of*

*Guilford* v. *Bd. of Suprs.*, 13 N. Y. 143; *Mayor, etc.*, v. *Tenth Nat. Bank*, 111 N. Y. 446; *New Orleans* v. *Clark*, 95 U. S. 644.)

HISCOCK, Ch. J. The writ of mandamus sought and granted in this proceeding in effect requires the appellants as officers and trustees of the village of Wilson to audit, allow and pay a claim of the petitioner for paving done by him in said village. The controlling facts out of which the controversy has arisen are as follows:

The predecessors in office of appellants made a contract with petitioner to lay a pavement sixteen feet wide in what was known as Young street in said village. There is no question here that said contract was valid and properly executed and petitioner has been paid in full thereunder. After this contract was let said trustees made another purported one with the petitioner whereby and whereunder an additional strip of pavement thirteen feet wide on each side of the original strip was to be laid and the cost thereof entirely assessed upon the abutting property owners. Petitioner performed his work as in and by said purported contract provided, and the attempt was then made to levy assessments upon the property of abutting owners wherefrom might be collected the cost of such paving.

It is, as we understand it, conceded that said purported contract and assessments were for various reasons utterly invalid, there being no sufficient compliance with the provisions of the Village Law (Cons. Laws, ch. 64). Nevertheless, as we read the allegations of the petition in the light of the briefs which have been filed, some of these assessments were paid, but in the end an action was brought enjoining their collection and no more were paid. At any rate, an apparent balance remained due to petitioner of $1,510.76 over and above the sums, if any, collected on the assessments and said trustees issued to him a certificate for said amount, claiming to act under that

provision of section 166 of the Village Law which provides that after the time for paying such assessments has expired " certificates of indebtedness may be issued for the aggregate amount of such assessment then remaining unpaid," and it is this certificate of which audit and payment are now commanded.

There being no other basis for the certificate than the purported contract and invalid assessments which have been referred to, it like them was invalid. It neither represented nor constituted any legal claim against the village, and down to this point, therefore, the events which have been described clearly did not give to it any such character or efficacy as justified the issuance of a writ of mandamus to compel its recognition and payment. But it is argued that its legal vitalization and binding obligation were subsequently accomplished by an act of the legislature and since the effect of this act presents the decisive question in this proceeding, it seems necessary for the purposes of discussion to quote it in full. It reads as follows:

" An act to authorize and empower the board of trustees of the village of Wilson to borrow money for discharging certain debts.   *   *   *

" Section 1. The board of trustees of the village of Wilson is hereby authorized, empowered and directed to borrow in the name and upon the credit of said village, such sum or sums of money not exceeding twenty-five hundred dollars as shall be necessary to pay off and discharge certificates of indebtedness and interest thereon issued pursuant to the village law for the paving of Young street in said village and which are now outstanding, the amount for such paving having been set aside by the court, and upon obtaining such loan to give the notes of the village of Wilson for such period of time as may be necessary until the amount so borrowed may be raised by taxation." (Laws of 1919, ch. 399.)

When we examine this statute in response to respond-

ent's assertion that it legalizes his certificate and calls for steps to provide for its payment, we are led to the conclusion that it does not accomplish this purpose.

In the first place it is only by liberal interpretation — more liberal than in our opinion is justifiable — of the language of the body of the statute that we can regard it as referring at all to respondent's certificate. There is no definite or specific designation of that certificate and it is only comprehended, if at all, within general terms of description. Those terms are to the effect that the village officials are authorized to borrow money, and " pay off and discharge certificates of indebtedness and interest thereon, *issued pursuant to the village law* for the paving of Young street." But that language when it refers to certificates " issued pursuant to the village law " plainly means, certificates validly issued under and in accordance with the provisions of the Village Law for a proper and recognized consideration. As has been pointed out that was not the character or description of this certificate at all. It was not issued as the statute permitted to be done, to make up a deficit existing after the laying and collection of valid assessments for the payment of sums due under a legal contract. Every one of these features was lacking and in our opinion this certificate cannot be described as one " issued pursuant to the village law," but rather as one issued in disregard and defiance of its provisions. This language of the statute seems to me to be so plain in describing something else than respondent's certificate and in excluding the latter from consideration that there is no reasonable opportunity for a different interpretation because it appears by extrinsic evidence that his certificate was the one which was outstanding. Manifestly the plain meaning of a statute cannot be changed by extrinsic evidence or unjustifiable interpretation.

But if we should assume that the act under a broad construction could be interpreted to mean legalizing and

directing payment of respondent's certificate, he would then encounter another difficulty which sems to me to be insuperable. The title of the act described it as one "to authorize and empower the board of trustees of the village of Wilson to borrow money for discharging certain debts." This was a "private or local bill" and the familiar provision of the Constitution commands that "No private or local bill which may be passed by the Legislature shall embrace more than one subject and that shall be expressed in the title." I do not think that the subject and purpose of this bill, as we are now assuming them to have been, were fairly expressed in its title. That title notified a legislator or a taxpayer of the village that it was to provide for the payment of "debts." While it may be conceded that the latter word has a somewhat broad and elastic meaning, its common usage and ordinary meaning indicate in the case of a municipality, at least, a valid claim which has ripened into a binding obligation. In the case of an individual we might talk of a debt of gratitude, but mere equitable claims are not binding upon a municipality and do not constitute debts as that word is ordinarily understood in dealing with such corporations. No one, in our opinion, reading this title providing for the payment of debts could fairly be expected to understand that the act itself would deal with claims which were utterly lacking in any feature of legal obligation and which at most constituted equitable claims which might be made the basis for remedial legislation.

The plain and obvious fact is that this bill was not one for the purpose of providing for the payment of existing and outstanding legal debts as the title indicated, but was an enabling or remedial statute intended to cure the inadvertence or indifference of the municipal authorities in making a purported contract which they had no right to make, and thus to create a legal debt where none before existed. The title did not describe

such a curative act, but indicated an act for the payment of legal debts where no cure of illegal proceedings was needed. It described as already existing that which as matter of fact would not exist until after the act had been passed and taken effect. It indicated that already a binding obligation had been created by legal proceedings when the very purpose of the act was to dispense with such proceedings and to transform an invalid claim into a legal obligation in spite of their omission. A legislator or taxpayer had a right to be advised of this purpose in order that he might, if he desired, oppose its effectuation, and when the title did not give him fair notice of what was intended it was deceptive and deficient.

We do not question, of course, the proposition elaborately argued by counsel that subject to certain constitutional and fundamental restrictions the legislature may cure the omission of, and dispense with the requirement for statutory steps in the making of a municipal contract or in the levying of assessments. That principle is perfectly well settled and the acts passed in pursuance of it are a multitude. But the power of the legislature to do this does not dispense with the constitutional requirement that the act by which it is to be done shall fairly indicate the existence of the purpose.

The requirement of this feature of the title of such an act is fully and carefully stated by Judge CHASE in *Economic P. & C. Co.* v. *City of Buffalo* (195 N. Y. 286, 297) where, after a full review of the purposes of this constitutional provision, it is written: " The most valuable test of such a title, and the one which we have usually employed, is the inquiry whether the title was so framed as to be deceptive or misleading, and consummated the evil at which the constitutional prohibition was aimed. Where one reading a proposed bill with the title in his mind comes upon provisions which take him by surprise, which he could not reasonably have anticipated, and so both citizen and legislator are misled and thrown off

their guard, it is our duty to declare the condemnation of the fundamental law. (*Matter of Application of Mayor*, etc., *of the City of New York*, 99 N. Y. 569, 576.)  \* \* \* The title must be such at least as fairly to suggest or to give a clue to the subject dealt with in the act, and unless it comes up to this standard, it falls below the constitutional requirement. \* \* \* The title of an act should not be misleading and wholly insufficient as an expression of the subject of the act. It should not give a false idea as to the subject and nature of the legislation actually embodied in the bill." (See, also, *Parfitt* v. *Furguson*, 159 N. Y. 111, 116, 117.)

The views which we have expressed lead to the conclusion that the order of the Appellate Division should be reversed and that of the Special Term dismissing the application for a writ of mandamus affirmed, with costs in this court and in the Appellate Division.

CHASE, COLLIN, CARDOZO, MCLAUGHLIN and ANDREWS, JJ., concur; CRANE, J., dissents.

Order reversed, etc.