Argued December 21, 1923, writ allowed February 13, rehearing denied March 11, 1924.

# STATE EX REL. UMATILLA COUNTY ET AL. v. R. O. HAWKS, COUNTY ASSESSOR.

(222 Pac. 1071.)

**Statutes—Defect in Title as Enacted by Legislature Remedied by Ballot Title Supplied on Submission to Popular Vote.**

1. Laws of 1919, Chapter 431, creating the state market road appropriation, *held* not void for failure of title to refer to levy of taxes by counties for market road purposes, under Constitution, Article IV, Section 20, in view of ballot title supplied by the Attorney General on the submission of the act to the people under Article IV, Section 1, the defect in the original title being remedied thereby.

**Counties—Legislature Could not Authorize County to Levy Tax in Excess of Constitutional Limitations.**

2. Laws of 1919, Chapter 431, creating the state market road appropriation, does not authorize the levy by a county, without the express approval of a majority of the voters of the county, of a tax in excess of the limitation imposed by Constitution, Article XI, Section 11, limiting the amount of taxes which a county can levy in any one year without the approval of a majority of the voters, notwithstanding Section 5 of such statute making such limitation inapplicable to any amount levied to secure for a county its share of such market road appropriation, since neither the legislature nor the people can exempt a statute from the operation of constitutional limitations.

**Evidence—Judicial Notice Taken as to Population of Counties.**

3. The Supreme Court will take judicial notice as to the population of counties within the state.

**Statutes—Constitutional Provision as to Title Mandatory.**

4. Constitution, Article IV, Section 20, requiring the title of an act to express the subject matter, is mandatory, and a statute which does not comply therewith is void.

---

1. Necessity and sufficiency of reference in title of statute to appropriations to put its purpose into effect, see note in L. R. A. 1917B, 812.

4. Construction of constitutional provisions relative to titles of statutes, see notes in 1 Ann. Cas. 584; Ann. Cas. 1915A, 79.

Insufficiency of title as affecting validity of act, see note in Ann. Cas. 1916D, 28.

See 15 C. J., pp. 636, 637; 23 C. J., p. 16; 36 Cyc. 1020, 1029, 1031, 1032.

Statutes—Title of Amendatory Act Merely Declaring That Earlier Statute is to be Amended Does not Permit Any Provision not Germane to Subject of Original Act.

5. The title of an amendatory act must indicate the subject of the amendment by reference to the act or title of the act to be amended, or the substance thereof, and such title is sufficient, if it contains any reference to the law to be amended, or designation of it by which it can with reasonable certainty be determined what law is intended; but, while a title which declares that the act is one to amend an earlier act is sufficient for the purpose indicated, it does not indicate a purpose to enact provisions that are not germane to the subject expressed in the title of the original act, and no provision is permissible in an amendatory act having such a title which is not germane to the subject of the original legislation.

Statutes—Title of Amendatory Act Held Insufficient.

6. Laws of 1923, Chapter 142, amending Laws of 1921, Chapter 208, providing for county tax supervising and conservation commissions in counties having a population of more than 100,000 so as to provide for such a commission in every county, *held* void for failure to indicate the scope of the amendment in the title, under Constitution, Article IV, Section 20, the mere reference in amendatory act to amended act, without indicating in what respect it was to be amended, being insufficient to warrant provision making act applicable to every county.

Original proceedings in *mandamus*.

In Banc.

WRIT ALLOWED. REHEARING DENIED.

For petitioners there was a brief over the names of *Mr. R. I. Keator,* District Attorney, and *Mr. C. Z. Randall,* with an oral argument by *Mr. Randall.*

For respondent there was a brief over the name of *Messrs. Fee & Fee,* with an oral argument by *Mr. Jas. A. Fee, Jr.*

*Mr. John S. Coke,* U. S. District Attorney, *Mr. H. L. Holgate,* District Counsel U. S. Bureau of Reclamation, *Mr. James B. Kerr, Mr. D. V. Kuykendall, Mr. J. N. Helgerson,* District Attorney for Polk County, *Messrs. Botts & Winslow* and *Mr. J. H. Carnahan, Amici Curiae.*

McCOURT, J.—This is a proceeding in *mandamus,* instituted originally in this court by Umatilla County, acting by and through its County Court, to compel the assessor of that county to enter and apportion upon the assessment-rolls of Umatilla County the sum of $66,976.81 for market road purposes, in compliance with the order of the County Court levying a tax in the above-mentioned sum for the aforesaid purpose and directing the county assessor to extend the tax so levied upon the tax-rolls of Umatilla County, as by law required.

The alternative writ of *mandamus,* and the return thereto, discloses the facts hereinafter stated.

In 1923 the State Highway Commission, by its annual apportionment of the state market road appropriation, created, established and produced under the provisions of Chapter 431, Laws of 1919, apportioned to Umatilla County from the funds in that appropriation the sum of $66,976.81, which sum Umatilla County was entitled to receive, in the event it provided by uniform levy on all the taxable property of the county for the specific purposes of market road construction during the year 1924, an amount equal to the above-mentioned sum apportioned to the county by the State Highway Commission.

The Budget Committee of Umatilla County, consisting of the County Court and three duly and regularly appointed electors and freeholders of the county, prior to the first day of December, 1923, prepared and adopted, in the manner and form required by law, the annual budget for the county, and set forth therein an estimate of the total amount of money proposed to be raised by taxation upon the real and personal property in the county and expended for all purposes during the fiscal year next ensuing.

The budget so prepared and adopted included a specified item of $66,976.81, which the county proposed to levy for the purpose of availing itself of the amount apportioned to the county by the State Highway Commission from the state market road appropriation as above stated, and to expend the same, together with the sum received from the state market road fund, for the specific purpose of constructing market roads within the county. The total amount proposed to be raised by taxation, as shown by the aforesaid budget, was in excess of the tax limitation of the county, as prescribed by Section 11, Article XI of the Constitution, to the extent of approximately $21,000. When completed and adopted by the Budget Committee as above stated, the aforesaid budget was delivered and submitted by the Budget Committee to the Tax Supervising and Conservation Commission of Umatilla County, Oregon, for the consideration of that commission, as required by the provisions of Chapter 142, Laws of 1923.

Thereafter on the first day of December, 1923, the County Court of Umatilla County in regular session adopted a resolution declaring the desire and intention of Umatilla County to avail itself of the state market road law (Chap. 431, Laws 1919), and caused a copy of the resolution to be served upon the Tax Supervising and Conservation Commission of Umatilla County.

After a hearing upon, and consideration of, the proposed budget for Umatilla County, the Tax Supervising and Conservation Commission of that county made findings and conclusions upon said budget, and the various items contained therein, whereby said budget was reduced by the commission in the aggregate sum of $92,591.81, and as a part of the reduction

of said budget, the commission rejected the item of
$66,976.81, included therein for market roads.

On December 4, 1923, the Tax Supervising and
Conservation Commission, by formal order directed
the levying board of Umatilla County to levy a tax
upon the real and personal property subject to assess-
ment and taxation within said county, in accordance
with the aforesaid findings and conclusions of the
commission, for the purpose of meeting the necessary
expenditure, which, in the judgment of the commis-
sion, should be made for the next ensuing fiscal year,
which order, and findings and conclusions upon which
the same was based, were by the commission reported
back in writing to the levying board of the county,
and certified copies thereof were filed in the offices of
the county clerk and county assessor of Umatilla
County.

Thereafter on the eleventh day of December, 1923,
the County Court of Umatilla County, at a regular
term of said court, made and entered an order levying
a tax in the sum of $66,976.81 upon all taxable prop-
erty in Umatilla County for market road purposes
to match the amount apportioned to Umatilla County
from the state market road fund by the State High-
way Commission, and by said order the County Court
directed the respondent, as county assessor, to extend
the said tax so levied upon the rolls of Umatilla
County as by law required. The respondent, as such
assessor, refused to comply with said order, and re-
fused to enter and apportion such tax and levy for
market road purposes upon the assessment-rolls of
Umatilla County, and notified relators that he would
not at any time enter and apportion such tax, unless
ordered to do so by a court of competent jurisdiction.

The respondent, as assessor, based his refusal to

enter and apportion the item of taxes in question upon the assessment-rolls upon the following objections: (1) That the market road law is unconstitutional, for the reason that the title of the act, as enacted by the legislature, contains no reference to the levy of taxes by counties for the purpose of raising funds to construct market roads, or for any other purpose; (2) That the County Court was without authority to levy a tax for market road purposes and the statute prohibited its extension upon the assessment-rolls after the item relating thereto had been rejected by the Tax Supervising and Conservation Commission; (3) That the addition of the item of $66,976.81 for market roads to the amount of taxes to be levied for other purposes, produced a total in excess of the tax limitation of the county, as defined by Section 11, Article XI of the Constitution.

Relators, in support of their petition for a permanent writ of *mandamus,* contend that taxes levied for market and road purposes are, by Chapter 431, Laws of 1919, expressly excepted from the constitutional limitation above mentioned, and that the act providing for Tax Supervising and Conservation Commissions in the several counties of the state (Chap. 142, Laws 1923) is unconstitutional and void, and the acts of the Tax Supervising and Conservation Commission of Umatilla County pursuant thereto are without authority, and null and void.

Considering first the validity of Chapter 431, Laws of 1919, relating to market roads, the bill for that act it appears was adopted by the legislature as other bills are enacted, but it contained an express provision, directing that the act should be referred to the people for their approval or rejection at the next regular or special election to be held throughout the

State of Oregon.  As the act came from the legislature, it was merely a proposed law, and did not become valid or effective as a law until approved by a vote of the people: Section 1, Art. I, Or. Const.

The act was submitted to the voters of Oregon at the special election held June 3, 1919.  Preparatory to its submission to the voters of the state, the measure was supplied with a ballot title, which title was prepared by the Attorney General pursuant to the requirements of the initiative and referendum provisions of the Constitution and the legislation provided to facilitate the exercise of those powers.

1. While the title of the act, as the same was enacted by the legislature, contains no reference to the levy of taxes by counties for market road purposes, and was therefore defective, the ballot title furnished by the Attorney General and which was a part of the measure as the same was submitted to the people remedied that defect.

The ballot title of the measure as submitted to, and approved by, the people retained the description of the subject matter set forth in the legislative title, and also embraced therein the following phrase:

" * * authorizing County Courts to levy a property tax in each county for construction of market roads in an amount equal to the sum apportioned, to such county hereunder * * ."

The requirement of Section 20, Article IV of the Constitution, that "every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title," was substantially complied with when the measure, as submitted to the people and as voted upon by them, was at that time supplied with a title which met the above constitutional requirement.

Section 5 of the market road law provides:

"The limitations imposed by Section 11, Article XI of the Constitution * * shall not apply * * to any amount which may be levied or appropriated by any county for the purpose of securing the part or share of said state market road appropriation to which it may be entitled under this act."

2. Relators claim that the above section of the statute authorized the County Court of Umatilla County to levy a tax in excess of the constitutional limitation for the purpose of raising the amount of money necessary to avail itself of the benefits of the act and with which to construct market roads.

Neither the legislature, nor the people in the exercise of their powers of legislation, can except or exempt measures enacted by them from the operation of constitutional limitations.

. Section 11, Article XI of the Constitution ordains:

"Unless specifically authorized by a majority of the legal voters voting upon the question neither the state nor any county, municipality, district or body to which the power to levy a tax shall have been delegated shall in any year so exercise that power as to raise a greater amount of revenue * * than the total amount levied by it in the year immediately preceding * * plus six per centum thereof * * ."

The market road bill was approved as a law by a state-wide vote. From all that appears in the record in the instant case, a majority of the votes cast in Umatilla County may have been against the measure. The voters of the state at large are not authorized by the foregoing provision of the Constitution to grant specific authority to the County Court of Umatilla County or to the tax levying body of any other political subdivision of the state to raise reve-

nue for local purposes in excess of the limitation prescribed by the Constitution.

In any case, the proposal to raise revenue in excess of the limitation must be separately submitted to the voters of the territory affected thereby in the form of a direct question, which if answered in the affirmative by a majority of the voters voting upon the question, specifically authorizes the tax levying officers of the district to levy taxes to raise the desired revenue, and withholds that authority if answered in the negative by a majority vote.

The legal voters of Umatilla County did not at any time, in the manner indicated, specifically authorize the County Court of that county to levy taxes in excess of the constitutional limitation for the purpose of constructing market roads in the county in 1924 or for any other purpose, and the assessor was not required to extend any tax in excess of that limitation, in the absence of a vote of the people of Umatilla County specifically authorizing such a tax to be levied.

The amount of taxes which the Budget Committee proposed to levy exceeded the tax limitations of the county by $21,000. The Tax Supervising and Conservation Commission reduced that budget $92,591.81, leaving the total amount thereof $71,591.81 less than the total amount of taxes which the county is permitted to levy under the restrictions of the Constitution.

The item for market roads does not equal the amount of the above-mentioned reduction below the maximum levy the county is permitted to make, and consequently to include the item in the levy will not exceed the limitation. Therefore the refusal of respondent to extend the levy upon the assessment-rolls, based upon that ground, is not sustained by the record.

Respondent also rests his refusal to extend the levy made by the County Court for market road purposes upon the statute defining the duties of Tax Supervising and Conservation Commissions and prescribing their authority and powers, which expressly prohibits respondent from extending the levy in question upon the assessment-rolls of the county, in defiance of the order of the Tax Supervising and Conservation Commission: Chap. 208, Laws 1921.

3. The statute last cited, by the express provisions of its title and of the body of the act, is limited in its application to counties having a population of more than 100,000. This court takes judicial notice of the fact that Umatilla County has a population of less than 100,000; also that Multnomah County is the only county in the state having a population in excess of 100,000.

The legislative assembly, at its session in 1923, was vigorously besieged by the public to enact legislation which would be effective to materially curb the rapid increase of the heavy burden of taxation imposed upon the people at each recurring tax levying period.

In response to that urgent demand, the legislature attempted, by the enactment of Chapter 142, Laws of 1923, to extend the provisions of Chapter 208, Laws of 1921, to all the counties of the state and to authorize the Governor to appoint a Tax Supervising and Conservation Commission in each county in the state, vested with the powers and authority given to such commissions in counties having a population of more than 100,000.

It has been suggested by the United States Attorney for the District of Oregon, and others appearing herein as *amici curiae,* that the title to the amendatory act does not contain any matter which discloses

a legislative intention to broaden or extend the scope of the original act so as to include counties having a population of less than 100,000; also that the subject matter embraced in the amendatory act is not expressed in the title thereof nor in the title of the original act, and therefore the amending act is void: Section 20, Art. IV, Or. Const.

The title of the amendatory act (Chap. 142, Laws 1923), is as follows:

"An act to amend the title and Sections 3 and 4 of Chapter 208, General Laws of Oregon, 1921, relating to county Tax Supervising and Conservation Commissions."

Although there is nothing in the foregoing title to indicate in what respect the earlier act was amended, the body of the act purports to amend Sections 3 and 4 of Chapter 208, Laws of 1921, by extending the provisions of those sections to all the counties of the state, and it is declared therein that—

" * * this act shall be construed to be an amendment extending the application of said Chapter 208, 1921 General Laws of Oregon, to the other counties of the state."

The subject matter of Chapter 208, Laws of 1921, is the supervision, regulation, limitation and levy of taxes of counties having a population of more than 100,000, by a commission created for such purpose. The entire subject matter embraced in the body of the act likewise exclusively relates to such counties. Consequently, if the subject matter of the amendatory act had been embraced in the original act, such subject matter not having been expressed in the title of the act, the provisions embracing the same would have been void, as expressly declared in Section 20, Article IV of the Constitution.

It will be noted that the title of Chapter 142, Laws of 1923, does not indicate any purpose to extend the provisions of Chapter 208, Laws of 1921, to all the counties of the state or to any county having a population of less than 100,000. On the contrary, the title imports legislative action in relation to Tax Supervising and Conservation Commissions in counties having a population of more than 100,000, for it expressly refers to Tax Supervising and Conservation Commissions in counties having a population of more than 100,000 and to no others.

4. The requirements of Section 20, Article IV of the Constitution are mandatory, and legislation which does not comply with them is void: *State* v. *Phenline,* 16 Or. 107, 112 (17 Pac. 572); *State* v. *Shaw,* 22 Or. 287, 289 (29 Pac. 1028); 25 R. C. L. 840.

5. The title of an amendatory act must indicate the subject of the amendment by reference to the act or title of the act to be amended, or the substance thereof, and such title is sufficient if it contains any reference to the law to be amended, or designation of it by which it can with reasonable certainty be determined what law is intended: *Ex parte Howe,* 26 Or. 181 (37 Pac. 536); *State* v. *Banfield,* 43 Or. 287 (72 Pac. 1093); *Murphy* v. *Salem,* 49 Or. 54 (87 Pac. 532).

But while a title which declares that the act is one to amend an earlier act, is sufficient for the purpose indicated, it does not indicate a purpose to enact provisions that are not germane to the subject expressed in the title of the original act: *Pacific Elevator Co.* v. *Portland,* 65 Or. 349, 385 (133 Pac. 72. 46 L. R. A. (N. S.) 363). And no provision is permissible in an amendatory act having such a title which is not germane to the subject of the original legislation (25

R. C. L. 870). Provisions of an amendatory act which are beyond the scope of the title of the act amended, and for that reason would have been void if they had been embraced in the earlier act, are likewise void when incorporated in the amendatory act: *Commonwealth* v. *Thomas*, 248 Pa. St. 256 (93 Atl. 1019).

In the case last cited, the court had before it for decision the precise question we are now discussing, and the title of the original act and the title of the amendatory act under consideration in the instant case bear a striking similarity to the corresponding legislative titles involved in that case.

Briefly stated, the facts in the Pennsylvania case, as shown by the report of the decision, were the following: By general act adopted in 1790, the management of jails and prisons in each of the counties of the State of Pennsylvania was confined to the sheriff of the county. In 1909, the legislative assembly approved an act creating boards in certain counties and vesting in such boards the management of the jails and prisons in their respective counties. The subject matter of that act, as expressed in its title, was the "better management of the jails or county prisons in the several counties of this Commonwealth, having over one hundred and fifty thousand inhabitants and less than two hundred and fifty thousand inhabitants each * * ." At the time of its passage, Lackawanna County was subject to the provisions of the abovementioned act of 1909, but the census of 1910 gave the county a population in excess of 250,000; whereupon the custody and management of its jails reverted to the sheriff of the county. By act passed May 21, 1913, P. L. 279, the act of 1909 was amended by creating a new class of counties subject to its provisions. This new class was composed of counties having a

population in excess of 150,000 and not exceeding 325,-000. The title of the 1913 act declared that it was an act to amend the act of 1909, and described the amended act by setting forth its entire title, together with the date of its approval.

As in the instant case, nothing appeared in the title of the amendatory act indicating an intention to extend the provisions of the original act to counties other than those described in the title of the original act. Mr. Chief Justice BROWN delivered the opinion of the court, and speaking of the amendatory act of 1913, said:

"Instead of confining itself to amending the provisions of the original act relating to the management of jails or prisons, it creates a new class of counties, to be taken out of the Act of * * 1790, and to be made subject to the provisions of the Act of 1909. When the Act of 1913 was passed, the county of Lackawanna was no longer interested in the provisions of the Act of 1909. The census of 1910 had taken it out of that act, and how can it be seriously contended that there was any notice in the title to the Act of 1913 that it, or any other county containing over 150,000 and less than 325,000 inhabitants, was to be made subject to the provisions of the Act of 1909? For the words 'containing over one hundred and fifty thousand and less than two hundred and fifty thousand inhabitants,' in the first section of the Act of 1909, the Act of 1913 substitutes 'containing over one hundred and fifty thousand and less than three hundred and twenty-five thousand inhabitants.' Can it be pretended that, if these last words had originally appeared in the Act of 1909, they would have been valid under the title to the act, which limited its provisions to counties containing over one hundred and fifty thousand inhabitants? When the Act of 1913 was passed, the people of Lackawanna County, as already observed, were no longer affected by the provisions of the Act of 1909, regulating the management of county

prisons in a certain class of counties, and nothing in the title to the Act of 1913 gave them any notice that their county was again to be subject to the provisions of the Act of 1909. The title to the Act of 1913 was so manifestly misleading as to the real purpose of the proposed amendment that the court below would have palpably erred if it had failed to enter judgment for the Commonwealth. * *

"The reader of the title to the Act of 1913 would scarcely surmise that its title 'covered an intent' to create a new class of counties to be brought within the provisions of the Act of 1909. On the contrary, his only surmise would be that the provisions of that act, as confined to counties therein named, were to be changed or altered. The purpose of the constitutional requirement that the subject of an act be clearly expressed in its title is to prevent the passage of unknown and alien subjects which may be coiled up in the folds of a bill. *Dorsey's App.*, 72 Pa. 192."

6. The provision of the Constitution of Pennsylvania prescribing the essentials of titles to legislative acts is substantially the same as Section 20, Article IV of the Constitution of Oregon, and the conclusions so well expressed by the Pennsylvania court are decisive of the question here, and clearly establish the insufficiency of the title of Chapter 142, Laws of 1923, and the consequent invalidity of the act.

The expression in the title of the amendatory act of a purpose to amend the title of the earlier act, and the incorporation in the amending act of a section purporting to amend the title of the original act to include all counties of the state, did not have the effect of enlarging the scope of either act so as to validate provisions therein not germane to the subject of the original legislation.

The reference in the title of the amendatory act to the title of Chapter 208, Laws of 1921, did not indicate in what respect it was to be amended.

In order to be valid as an amendment, the subject matter of the later statute must be fairly indicated by the title to the earlier act, and, on the other hand, if the later statute is to be considered as an original act of legislation, the subject matter embraced therein must be expressed in its title.

Whether a statute is in the form of an amendment or original legislation, the failure to incorporate in the title of the act an expression of its subject-matter essential to its validity cannot be supplied by reference to the body of the act.

The Tax Supervising and Conservation Commission of Umatilla County having been appointed under the authority of a void statute, it was not a legally constituted body, and its acts respecting the tax levy of the county for 1924 were not effective to control the power and discretion of the County Court in the matter of tax levies authorized by law.

In view of the invalidity of the statute for want of a sufficient title, it becomes unnecessary to decide the questions raised by relators respecting the authority of the legislature to delegate taxing powers to a commission appointed by the Governor. It was within the discretion of the County Court of Umatilla County to determine whether the county should avail itself of the benefits of the market road law. And having formally resolved to secure the apportionment of the market road appropriation made to the county for the year 1924, it was within the power of the County Court to levy, as it did, the tax necessary to obtain the same, and when the levy was made, and respondent was duly and regularly apprised thereof, the law specially enjoined upon him the duty to extend the levy upon the assessment-rolls of the county.

On December 28, 1923, the decision of this case was given orally, and an order was made, directing that a peremptory writ of *mandamus* be issued as prayed for in relators' petition. The foregoing opinion constitutes a written statement of the decision then made.

WRIT ALLOWED.    REHEARING DENIED.

BURNETT and HARRIS, JJ., not sitting.