WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, defendant below, plaintiff in error, v. JOHN GILPIN HIGHFIELD, Register of Wills, in and for New Castle County and State of Delaware, for the use of the State of Delaware, plaintiff below, defendant in error.

HARRY G. HASKELL, executor of the last Will and Testament of Elizabeth D. Haskell, defendant below, plaintiff in error, v. J. GILPIN HIGHFIELD, Register of Wills, in and for New Castle County, in the State of Delaware, for the use of the State of Delaware, plaintiff below, defendant in error.

HARRY G. HASKELL, executor of the last Will and Testament of Elizabeth D. Haskell, defendant below, plaintiff in error, v. HOWARD M. WARD, State Treasurer of the State of Delaware, for the use of the State of Delaware, plaintiff below, defendant in error.

*(February* 6, 1931.)

WOLCOTT, Chancellor, RICE and RODNEY, J. J., sitting.

*Robert H. Richards* and *Caleb S. Layton* (of Richards, Layton and Finger) for Wilmington Trust Company, plaintiff in error.

*James H. Hughes, Jr.* (of Ward and Gray) for Harry G. Haskell, plaintiff in error.

*William H. Foulk,* Deputy Attorney-General, for defendants in error.

Supreme Court of the State of Delaware, Nos. 2, 3, and 4, January Term, 1931.

WOLCOTT, Chancellor, delivering the opinion of the court:

These cases present two questions: The first one is, whether or not, since May 6, 1929, the date of the enactment of the act found in 36 *Delaware Laws, chapter* 7, by which an important section of the inheritance tax provisions of the Delaware code was attempted to be amended, the inheritance tax law has been in effect, though not in form, repealed. The second question is, whether, if the inheritance tax provisions are ineffective, the act of April 29, 1927 (35 *Delaware Laws, c.* 8) by which an estate tax is imposed, is any longer in force. If the first question is answered in the affirmative, the second question thus calls for an answer. If, on the other hand, the first question is answered in the negative, the second one cannot arise.

Inasmuch, therefore, as the necessity of considering the second question is dependent upon the answer to the first, the logic of the situation suggests that we direct our attention first to a consideration of whether the inheritance tax provisions are no longer in force.

In doing so it is sufficient for the present purposes to commence our recitation of the pertinent statutory inheritance tax enactments · with the act of March 24, 1917, found in 29 *Delaware Laws, chapter* 7. That act wrote into chapter 6 of the Code of 1915 the following provisions:

"146. Sec. 109. Property Subject to; Rates; Exemptions. All property within the jurisdiction of this State, real and personal, and every estate and interest therein, whether belonging to residents or non-residents of this State (except shares of the capital stock of corporations created under the laws of this State when owned by persons without this State) which passes by will, or by the intestate laws of this State or by deed, grant, gift, or settlement (except in cases of a bona fide purchase for full consideration in money or money's worth) made in contemplation of, or intended to take effect in, pos-

session or enjoyment, after the death of the grantor, donor, or settlor, to any person, or persons, bodies politic, or corporate, in trust or otherwise, shall be subject to taxation, as follows:

"Class A. * . * * (Stating degrees of relationship and rates of tax).
"Class B. * * * (Stating the same).
"Class C. * * * (Stating the same).

"(The statute then proceeded to specify certain exemptions and to define 'contemplation of death' as used in the section.)"

The next legislation on the subject was the act approved April 25, 1927, 35 *Delaware Laws, c. 7.* That act struck out all of the section just quoted down to the words "Class A" and inserted in lieu thereof the following:

"146. Sec. 109. Property Subject to; Rates; Exemptions: Where real property is referred to in Sections 109 to 115, inclusive, of this Chapter, it shall be deemed and held to mean real property actually situated within this State but not real property actually situated without this State unless otherwise specified; and where personal property is referred to in said Sections 109 to 115, inclusive, it shall be deemed and held to mean all kinds of personal property whether tangible or intangible except tangible personal property having an actual situs without this State unless otherwise specified.

"The estates of persons who at the time of their death were non-residents of the State of Delaware, and the gifts and legacies in the last will and testament of every such non-resident, and the distributive shares of the intestate estate of every such non-resident shall be exempt from taxation in this State except the real property actually situated in this State of such non-resident and except also the tangible personal property of such non-resident having an actual situs in this State which real property and tangible personal property having an actual situs in this State shall be subject to the provisions of Sections 109 to 115, inclusive, of this Chapter.

"All property, real and personal, and every estate and interest therein, legal or equitable, belonging to any person who at the time of his death was a resident of the State of Delaware, and which passes by will or by the intestate laws of this State, or by deed, grant, gift, or settlement (except in cases of a bona fide purchase for full consideration in money or money's worth) made in contemplation of death or intended to take effect in possession or enjoyment after the death of the grantor, donor, or settlor to any person or persons, body politic, or corporate (whether resident or non-resident of this State) in trust or otherwise, shall be subject to the tax specified in this Section; all tangible personal property having an actual situs in this State, and all real property actually situated in this State and every estate and interest therein, legal or equitable, belonging to any person who at the time of his death was not a resident of this State and which passes by will or by intestacy, or by deed, grant, gift or settlement (except in cases of a bona fide purchase for full consideration in money or money's worth) made in contemplation of death or intended to take effect in possession or enjoyment after the death of the grantor, donor, or settlor to any person or persons, body politic, or corporate (whether resident or non-resident of this State) in trust or otherwise, or shall be subject to the tax specified in this Section."

The next and final piece of legislation on the subject is found in the act entitled "An Act to amend Chapter 98 of the Revised Code of Delaware (1915) relating to Inheritance Tax as the same has been amended," approved May 6, 1929, 36 *Delaware Laws, c.* 7. That act in section 1 provided as follows:

"Section 1. That Chapter 6 of the Revised Code of Delaware (1915) be and the same is hereby amended by striking out all of 146, Section 109 after the first paragraph thereof, and inserting in lieu thereof the following:

"(Then follows a series of classifications starting with Class A and ending with Class D; and repeating the exemption provisions and the definition of 'contemplation of death' as found in the section in its 1917 and 1927 forms. The change in the classifications consisted only in this—that husbands and wives were more generously dealt with.)"

Two points of criticism are directed against this act. One has to do with the title. It will be observed that the title of the act is an act to amend chapter 98 of the Code relating to inheritance taxes. Chapter 98 of the Code to which the title of the act refers deals generally with "Administration of Estates. Register of Wills." There is a reference, however, in chapter 98 to the subject of inheritance taxes. It is found in section 79 thereof where the duty is laid on the Register of Wills to ascertain, collect and account, for collateral inheritance taxes as provided in chapter 6. The body of the act amends chapter 6, 146, Sec. 109 of the Code. The section amended in the body is therefore part of a chapter different from that referred to in the title.

In view of this situation, it is contended that the act of 1929 is unconstitutional as violative of article 2, § 16 of the Constitution which provides that "No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title." If this contention be sound, then the result would be simply this, that 146, Sec. 109 as it stood in 1927 would stand unrepealed and inheritance taxes would be collectible in accordance with the classification and rates specified therein, instead of in accordance with the classification and rates specified in the nugatory act of 1929. Such a result would not mean that the liability to pay inheritance taxes had been repealed. All it would mean would be that the question of amounts would be referable to the 1927 legislation.

The other point of criticism against the 1929 act is that it in terms repeals all of the 1927 act after the first paragraph thereof and then inserts certain classifications. A glance at the 1927 act reveals that striking out all after the first paragraph and inserting the classifications, completely emasculates the act by taking out of it the language of the second and third paragraphs which define the property subject to tax. If such is the effect of the act, it would follow that the inheritance tax provisions in our revenue statutes have in effect been repealed. It is argued, however, in behalf of the defendants in error that the use of the word "first" in the body of the act is manifestly a clerical error, that it was the evident intent of the legislature to use the word "third" instead of "first," that if this intent be so found and declared by the court, the vital portion of the 1927 act will not be struck out, in which event the vigor of the inheritance tax statute will remain unimpaired.

If, however, the title of the act of 1929 be violative of the constitutional provision, the whole act fails and there would in that event be no occasion to consider the further question, which has been argued, of whether or not the word "first" in the body of the act may be read to mean "third."

It is in order then to consider first the question of whether or not the title of the 1929 act is such, in view of the body of the act, as to render the entire act unconstitutional.

Our constitutional provision as just stated is, that

"No bill * * * shall embrace more than one subject, which shall be expressed in its title."

The object of this provision is stated by *Judge Cooley* in his work on *Constitutional Limitations*, 143, quoted with approval by the court in banc of this state in *Equitable Guarantee & Trust Co. v. Donahoe*, 3 *Penn.* 191, 49 *A.* 372, 373, as follows:

"It may be assumed as settled that the purpose of these provisions was: First, to prevent hodgepodge or log-rolling legislation;

"Second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation, and which might, therefore, be overlooked, and carelessly and unintentionally adopted;

"Third, to fairly apprise the people through such publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have an opportunity of being heard thereon by petition or otherwise, if they shall so desire."

As said by this court in *Monaghan v. Lewis*, 5 *Penn.* 218, 222, 59 *A.* 948, 949, 10 *Ann. Cas.* 1048, the object of that portion of the constitutional provision which requires the subject of an act to be expressed in its title is "to prevent deception by provisions of which the title gives no intimation."

The disposition of the courts is towards a liberality of construction of constitutional provisions of the kind we are here concerned with. *Cooley, Constitutional Limitations* (7th *Ed.*) 209. As was observed in *Monaghan v. Lewis, supra,* such provisions "should not be so construed as to defeat or embarrass legislation where there has been a substantial compliance with its requirements. Where it is possible, it should be so construed as to uphold, rather than destroy, legislation." This is but a particular application to the constitutional provision in question of the general principle which courts everywhere apply, viz., that every presumption is in favor of the constitutionality of legislative enactments and that they should not be declared invalid unless their invalidity is beyond doubt.

Liberality in construction, however, can never be justified if it be carried to an extreme that verges on emasculation. Such constitutional provisions are mandatory in their requirements. Even though we should think that the legislature in referring in the title of the act to chapter 98 of the Code committed a mere clerical error and really meant the title to use the words chapter 6 instead, that fact would be of no moment, for the question is not one of intent on the part of the lawmakers in phrasing the title, but of its significance and meaning to those who might read it at that stage of its history when it was only a bill going through the process of its enactment into law.

Applying these principles to the act before us, we are impelled to the conclusion that it is violative of the constitutional requirement in that the title fails to express the subject of its contents.

We must address our thoughts regarding this act to it as it was in its primitive stages, when it was pending as a bill in the legislature. It will not do to refer to the manner in which the chal-

lenged statute is indexed in the laws, or to the subject-matter headings under which it was printed in the volume of laws, for information concerning the notoriety to the legislators and the public of the subject-matter of its contents as it was introduced in and was passing through the legislature. The constitutional provision speaks of bills and joint resolutions. It does not refer to acts. We disregard therefore the argument of the attorney for the defendant in error in so far as it undertakes to rely on suggestions of that sort.

When "An Act to amend Chapter 98 of the Revised Code of Delaware (1915) relating to Inheritance Tax as the same has been amended" was introduced in the legislature, what subject, we ask, were the legislators and that portion of the public generally who might be interested, entitled to believe the proposed act was intended to deal with? One who was interested in the question would naturally refer to chapter 98 of the Code and look for the inheritance tax provisions which the title of the act advised him were to be found somewhere therein. Upon turning to that chapter, the inquirer would be immediately struck by the fact that its headings indicated that it was not only a chapter dealing with the "Settlement of Personal Estates," but also with the subject of "Register of Wills." These topics are not so foreign to the incidents of the general subject of inheritance taxes as to warrant the inference that some sort of inheritance tax provision could find no logical place in their treatment. And so he would examine the chapter through its entire length for discovery of that portion of it which related to inheritance tax. The title of the bill in substance advised him that somewhere in the chapter legislation on that subject would be found. The inquirer's search would disclose to him that in section 79 of the chapter, the matter of inheritance tax was in fact dealt with. To be sure, the section referred to would show itself to be of no great substantial importance because it deals only with the machinery of collection. It places on the Register of Wills the duty of ascertaining, collecting and accounting for collateral inheritance taxes as provided in article 10, chapter 6 of the Code.

Having found this to be the only part of chapter 98 which related to inheritance tax, would not the interested inquirer be justi-

fied in assuming that the proposed legislation would deal simply with some phase of the mechanics of the tax's collection? If he were unconcerned with that and interested only in the substantive provisions of the inheritance tax law, he would dismiss from his further attention the matter of the proposed bill's enactment.

The bill, however, when it emerged from the legislative process and became an act, would be found to contain in its body a provision touching the material substance of the inheritance tax provisions found in an entirely different chapter.

We cannot escape the conclusion, therefore, that the title violates the constitutional provision. Its title gives notice of an amendment to a chapter dealing with the adjunctive features of the inheritance tax law, and its body deals with an entirely different chapter that legislates upon the principal features of the law.

In *Matter of Dean*, 230 *N. Y.* 1, 128 *N. E.* 897, 899, the following language of *Judge Chase* in *Economic Power & Const. Co. v. City of Buffalo* (195 *N. Y.* 286, 88 *N. E.* 389) was quoted with approval:

"The most valuable test of such a title, and the one which we have usually employed, is the inquiry whether the title was so framed as to be deceptive or misleading, and consummated the evil at which the constitutional prohibition was aimed. Where one reading a proposed bill with the title in his mind comes upon provisions which take him by surprise, which he could not reasonably have anticipated, and so both citizen and legislator are misled and thrown off their guard, it is our duty to declare the condemnation of the fundamental law. *Matter of Application of Mayor, etc., of the City of New York*, 99 *N. Y.* 569, 576 [2 *N. E.* 642]. * * * The title must be such at least as fairly to suggest or to give a clue to the subject dealt with in the act, and, unless it comes up to this standard, it falls below the constitutional requirement. . * * * The title of an act should not be misleading and wholly insufficient as an expression of the subject of the act. It should not give a false idea as to the subject and nature of the legislation actually embodied in the bill."

In the case of *American Surety Co. v. Great White Spirit Co.*, decided by the Court of Errors and Appeals of New Jersey, 58 *N. J. Eq.* 526, 43 *A.* 579, the title of the act there before the court was "A further supplement to an act entitled 'An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof,' approved April eighteenth, one thousand eight hundred and ninety-four." The title of the supplement accurately re-

cited the title of the act which was intended to be supplemented. There was no act, however, bearing that title approved in 1894 as the title of the supplementary act recited. The only act bearing that title was enacted in 1884. The court, while holding that the title of the supplement could have misled no one, in view of the fact that the only act bearing the title was the one of 1884, indicated quite clearly that if there had been an act of that title approved in 1894, the title would have vitiated the act, because the body dealt with the one of 1884.

The discussion of the court in this case appears to be pertinent in principle upon the one before us, because in the instant case there was legislation in Chapter 98 relating to inheritance tax, and the body of the act relates to legislation bearing on the same subject in another and distinct chapter. The case therefore is in principle analogous to the suppositious one in which the New Jersey court indicated that the title would have been held to void the act.

It is doubtless true that it is permissible, under such constitutional provisions as the one before us, for the title of an amendatory act to express its subject by reference only to the subject-matter and section or chapter number of the act it proposes to amend. Where such a method of title-phrasing is employed, however, the authorities seem to be without dissent to the effect that the body of the act must be germane to the subject contained in the legislation to which the title of the amending act refers. *Ex parte Cowert*, 92 *Ala.* 94, 9 *So.* 225; *New York & Greenwood Lake Ry. Co. v. Township of Montclair*, 47 *N. J. Eq.* 591, 21 *A.* 493; *State v. Candelaria*, 28 *N. M.* 573, 215 *P.* 816; *State v. Hawks*, 110 *Or.* 497, 222 *P.* 1071, 1074; 1 *Lewis' Southerland, Statutory Construction* (2d *Ed*), § 139.

If the title of the present act were worded in accordance with what its references mean, it would read as follows: An Act to Amend section 79 of chapter 98 of the Revised Code (1915), relating to the duties of the Register of Wills with respect to collateral inheritance tax. Certainly if the title had so read, its inappropriateness as descriptive of a proposition to re-classify the persons liable

to the payment of inheritance taxes generally and to define the rate of tax applicable to each class, would be clearly apparent.

The case of *State v. Hawks, supra,* is closely analogous to the one at bar. In that case the title of the act before the court was "An act to amend the title and sections 3 and 4 of chapter 208, General Laws of Oregon, 1921, relating to county tax supervising and conservation commission." Chapter 208, which this act amended, applied in terms, only to counties of more than one hundred thousand population. The amending act made it apply to counties of less than one hundred thousand population. Notwithstanding the title of the amending act showed it dealt with county tax supervising and conservation commissions, yet the court said in effect that the title of the act narrowed the scope of the permissible legislation on that general subject to that portion of it that was comprised within the boundaries of Chapter 208, that is to counties of more than one hundred thousand population.

So, in the instant case, while the title of the amending act showed it dealt with "inheritance tax," yet the permissible legislation within that general field was confined by the reference to chapter 98 to the duties of the Register of Wills in connection with the ascertaining, collection and accounting for the collection.

We hold that the title of the act found in 36 *Delaware Laws, chapter* 7, fails to express its subject as is required by the constitutional provision before quoted, and that the act is therefore unconstitutional and void.

Having reached this conclusion, it is unnecessary for us to consider the question of whether the word "first" as found in the act should be read "third."

The result is that the inheritance tax provisions of our law stand as though the act in question had never been passed and approved. The inheritance tax provisions as they were immediately before the enactment of the act of 1929 (36 *Delaware Laws, c.* 7) are therefore in full force and effect. This being so, the predicate upon which the question rests concerning the estate tax, which the third case above stated presents, is destroyed, and there is hence no occasion to take further notice of it.

The only change which the ineffective act of 1929 attempted to introduce into the inheritance tax provisions was to make a separate classification embracing a surviving husband or wife. The result attempted was to exempt estates going to them up to twenty thousand dollars in value, whereas prior to 1929, and now (in the light of this decision), their exemption extended only up to three thousand dollars. All the other 1927 classifications and the applicable rates were not disturbed by the 1929 act.

In the case of the *Wilmington Trust Co., Ex'r, v. Highfield,* whether the judgment be based on the 1929 scheme of classification or the one theretofore as now prevailing, the result would be the same, because neither a husband nor wife is involved.

In the case of *Haskell, Ex'r, v. Highfield,* the surviving husband is the sole beneficiary. We presume that the judgment was rendered on the assumption that the 1929 act was valid, and that the judgment therefore does not include taxes on seventeen thousand dollars which, as that assumption was erroneous, should have been taxed. We do not, however, disturb the judgment on that ground for two reasons—first, because the judgment was entered in the amount stipulated as due, if any was found to be due; and second, because the plaintiff below, who is the only one that could complain against the judgment's insufficiency, has not chosen to take proceedings in error against it.

In the third case, *Haskell, Ex'r, v. Ward,* the correctness of the judgment as representing the estate tax is not challenged by reason of error in calculating its amount. The only question raised against the propriety of that judgment was that there being no valid existing inheritance tax law, there could be no estate tax obligation. That question we have already indicated cannot arise, in view of our decision that the inheritance tax provisions of the law in the form in which they are found prior to 1929 are in full force and vigor.

Judgments below will be affirmed.