State *ex rel.* Birdsey *v.* Baldwin.

---

STATE *ex rel.* LINUS BIRDSEY AND ANOTHER *vs.* MARCUS E. BALDWIN AND ANOTHER.

It is provided by sec. 1, ch. 2, tit. 3, of the General Statutes of 1875, that county commissioners shall be appointed by the General Assembly for New Haven County, their powers and duties and terms of office being fixed by later sections of the same chapter. In 1877 the legislature passed an act as follows:— "Sec. 1. So much of sec. 1, ch. 2, tit. 3, of the Gen. Statutes as provides that county commissioners shall be appointed for New Haven County is hereby repealed, and the board of county commissioners of New Haven County is hereby abolished. Sec. 2. A board of commissioners for New Haven County is hereby created, to be appointed by the General Assembly, and said board shall perform in and for New Haven County all the duties and have all the powers provided by chap. 2, tit. 3, of the General Statutes for county commissioners." Later sections made the same provisions as the former law with regard to their number and terms of office, and the act was made to take effect on its passage. Held that the instantaneous re-enactment by the second section of the same act that was repealed by the first, rendered the repeal inoperative and left the former law in force, and that the commissioners appointed under the old law and whose terms had not expired remained in office.

The legislature has power to repeal a statute under which an incumbent of an office has been appointed to and holds the office for a term not yet expired; and the office expires with the repeal of the statute.

State *ex rel.* Birdsey *v.* Baldwin.

INFORMATION in the nature of a writ of *quo warranto;* filed by the Attorney for the State in the Superior Court for New Haven County at its January term, 1877.

The information alleged that the relators, Linus Birdsey and John W. Lake, were duly appointed by the General Assembly county commissioners for New Haven County, the former at the May session in the year 1875 and the latter at at the May session in the year 1876, each for three years from the 4th day of July following his appointment, which terms were unexpired; and that each of the relators had entered upon and been in the exercise of said office, and that neither had resigned, or been removed from the same. The information then alleged that the defendants, Marcus E. Baldwin and Henry Whipple, had without authority and unlawfully taken possession of all the books and other property pertaining to said office and had usurped said office and without law or right had assumed to have the powers and discharge the duties of the same.

The defendants in their plea averred that the statute under which the relators had been appointed was repealed by the General Assembly at its January session in the year 1877, and the then existing office of county commissioner for New Haven County abolished; and that the General Assembly at the same session and by another section of the same act established the present office of commissioners for New Haven County, and appointed the defendants as two of the persons to hold said office, with one John W. Bassett who was at the time of said repeal a commissioner under the former law, and that they were fully entitled to said office, and had of right assumed to exercise its powers and perform its duties and had lawfully taken possession of the property pertaining to the same.

To this plea the Attorney for the State demurred, and the case was reserved upon the demurrer for the advice of this court.

The act, which was entitled "An Act relating to County Commissioners," is as follows:—

"*Section* 1. So much of section one, chapter two, title

three, of the General Statutes of 1875, as provides that county commissioners shall be appointed for New Haven County, is hereby repealed, and the board of county commissioners of New Haven County is hereby abolished.

"*Section* 2.   A board of commissioners for New Haven County is hereby created, to be appointed by the General Assembly, and said board shall perform in and for New Haven County all the duties and have all the powers provided by chapter two, title three, of the General Statutes, for county commissioners.

"*Section* 3.   The General Assembly shall appoint three persons to be the board of commissioners for New Haven County, who shall hold their offices from the date of their appointment until July 1st, 1877.

"*Section* 4.   The General Assembly shall appoint one commissioner for New Haven County, who shall hold his office for one year from July 1st, 1877, one commissioner who shall hold his office for two years from July 1st, 1877, and one commissioner who shall hold his office for three years from July 1st, 1877; and the General Assembly shall hereafter appoint annually one commissioner for New Haven County, who shall hold his office for three years from the next succeeding July 1st.

"*Section* 5.   The Governor may fill any vacancy arising in the board of commissioners for New Haven County, during the recess of the General Assembly, until its next session.

"*Section* 6.   This act shall take effect from its passage."

*G. H. Watrous* and *R. Hicks*, in support of the demurrer.

1.   The legislature in removing the relators usurped the powers of the judicial department of the government.   It is admitted on the part of the defendants that the whole object of the action of the legislature was to remove from office the persons then in office as commissioners of New Haven County under the statute as it then stood, and whose terms had not expired.   The journals of the two houses show that the act was passed upon a petition asking for the removal of these commissioners and upon the report of the committee thereon.

The legislature can remove the officer only by abolishing the office. Here they attempt to remove the officer without abolishing the office. The legislature has a right to repeal the law, as they are the judges whether a law is necessary, and if the law falls the office falls with it; but it is an absurd claim that, while the law never ceases to exist, the officer is dropped out by this trick in legislation. "The right to remove a public officer for misbehavior in office does not appertain to the executive; but such is a judicial act and belongs to a court." McCrary's Am. Law of Elections, §§ 255, 258. "Every proceeding to remove an officer for official misconduct or neglect is essentially and thoroughly a judicial proceeding, and has, consequently, and with the utmost propriety, been confided to that branch of the state government, nor in the frame of the state constitution is there wanting an organ appropriate to the exercise of this jurisdiction. I think the authority in question is vested in the court for the trial of impeachments." *State* v. *Pritchard*, 36 N. Jersey Law R., 101. "We do not doubt that every proceeding for the removal of an officer for cause, that is for official misbehavior, is essentially an exercise of the judicial power of the commonwealth, and would therefore refer itself to the judicial department of the government, if not otherwise disposed of by the constitution or the laws." *Page* v. *Hardin*, 8 B. Monr., 672.

2. An officer has a right to hold his office for the term of his appointment, provided the law under which he holds has not been repealed, or he has not been legally removed, and that right constitutes a species of property. That an office is a species of property has been repeatedly decided in this country. "The legal effect of the appointment was to give the office to the applicant, and he became entitled to it as a vested right, for the term of three years, from which he could be only removed in the manner prescribed by law, and of which the legislature had no power to deprive him." *Cotten* v. *Ellis*, 7 N. Car., 548. "There can be as little doubt that the act of declaring that the office involved in this case has been forfeited, was a judicial decision. It had all the essen-

tial elements of such adjudication. It was a determination of the fact as well as the law, and comprised at once the functions of the jury and the judge, and it related to a right of property.". *State* v. *Pritchard*, supra. "An office is as much a species of property as anything which is capable of being held or owned. ·An office being a species of property, , it is evident that conflicting claims to the right to hold it must be decided in the same constitutional manner as all other claims respecting property." *Wammack* v. *Holloway*, 2 Ala. N. S., 34. "That an office is the subject of property thus explained, is well understood by every one, as well as distinctly stated from the earliest times in the law books. A public office is the subject of property as every other thing corporeal or incorporeal from which a person can earn a livelihood and make gain. We cannot doubt that in law an office is deemed the subject of property, and valuable property to the officer." *Hoke* v. *Henderson*, 4 Dev., 21. Unless the courts recognize a property in an office the legislature may at any time remove any incumbent and substitute another without any change of the law. No legislature since the adoption of our constitution has ever assumed such power. An office, like any other property, can be taken away only by one process of law. Due process means that charges shall be preferred, witnesses heard, and a judgment rendered. *Taylor* v. *Porter*, 4 Hill, 147. The constitutional mode for removing a public officer is by impeachment, and by that only. Constitution of Conn., art. 9, sec. 3; *State* v. *Pritchard*, supra; *State* v. *Wiltz*, 11 Louis. Ann. R., 441, 443. Any ingenious mode of evading the constitutional mode of removing a public officer will not be countenanced by the courts. "To do indirectly, in the abused exercise of an acknowledged power, not given for but perverted to that purpose, that which is expressly forbidden to be done directly, is a gross and wicked infraction of the constitution, and the more so because the means resorted to deprive the injured person, and are designed to deprive him of all redress, by preventing the question becoming the subject of judicial cognizance." Ruffin, C. J., in *Hoke* v. *Henderson*, 4 Dev., 27. "The legislature may create an

office for the public good, or it may repeal the office for the general welfare. But so long as it lets the office exist, its incontestable judgment stands that it is for the public good, and the incumbent has a vested legal interest in the term, which the legislature cannot touch by any mere experimental legislation, however ingenious may be the pretext, or however much it may urge the popular demand." *Standeford* v. *Wingate,* 2 Duvall, 466.

3. But aside from any constitutional question, this act is wholly inoperative as a piece of ordinary legislation. It really means nothing. The first section repeals, and the second section restores. There is no time when the office of county commissioner ceased to exist. It is the same as if no law had been passed. It has been so decided in several similar cases. "In our judgment it is clear that the effect of this repeal and re-enactment was to continue the uninterrupted operation of the statute. There is no change in the law, and the re-enactment of the new is simultaneous with the repeal of the old provisions. It was said in the argument that there was an instant of time between the taking effect of the new statute and the expiration of the old, but it is difficult to perceive by what process such instant of time could be estimated. The new statute took effect at the same instant with the repealing statute. When the legislature re-enacted the same provision, and provided for its taking effect at the same time with the repealing of the old statute, it is clear that they intended to continue such provisions in force without interruption." *Fullerton* v. *Spring*, 3 Wis., 667. "The repeal of an act by virtue of which suits have been brought, and are pending at the time of the repeal, does not affect suits where the same act which makes the repeal contains a substantial re-enactment of the provisions under which the suits were brought." *McMullen* v. *Guest*, 6 Tex., 275.

*J. W. Alling* and *H. Stoddard,* contra.

1. The legislature had full power to legislate the relators out of office. 1 Dillon Mun. Corp., §§ 39, 168; Cooley's

Const. Lim., 276; *Starr* v. *Pease*, 8 Conn., 547; *Pratt* v. *Allen*, 13 id., 119; *Taft* v. *Adams*, 3 Gray, 126; *Opinion of the Judges*, 117 Mass., 603; *Connor* v. *Mayor, &c. of New York*, 5 N. York, 296; *Butler* v. *Pennsylvania*, 10 How., 402; *Beebe* v. *Robinson*, 52 Ala., 66; *Ex parte Lambert*, id., 79; *Denver* v. *Hobart*, 10 Nev., 28; *County Commissioners* v. *Jones*, 18 Minn., 199; *State* v. *Douglass*, 26 Wis., 428; *Attorney General* v. *Squires*, 14 Cal., 12; *In re Bulger*, 45 id., 553. And the legislature of course had the power, having legislated the relators out of office, to appoint other suitable persons to act as commissioners of New Haven County, with all the powers incident to that office.

2. But the relators say that the defendants have not been clothed with all the powers of county commissioners for New Haven County, because their powers and duties are limited to those specified in "chapter two, title three," of the General Statutes, while other statutes give county commissioners other and important powers and duties. But does the reference to "chapter two, title three," of the General Statutes limit the powers and duties of the commissioners for New Haven County to such as are defined in that chapter and title?` It is agreed on both sides that the legislature did not intend to deprive New Haven County of suitable and proper commissioners, to transact the business proper to be transacted by county commissioners. The powers and duties of county commissioners are too important to permit a suspicion that the legislature intended any such result. The General Assembly also in 1877 passed many acts relating to county commissioners, on the theory that that office existed uniformly throughout the state. The act further provides in sections three and four for commissioners for this county for periods of one, two and three years from July 1, 1877, showing that the legislature intended to enact a permanent law on this subject. Nothing in the act in terms limits the powers of the commissioners for New Haven County, to "chapter two, title three," of the General Statutes. This act does not say that the commissioners shall have only those powers. No reason can be imagined or conceived why the powers of the commis-

sioners should be confined to "chapter two, title three." So we do not put forward a construction that is hostile to the language of the statute. All other maxims of construction are subordinate, and yield to the leading principle that the intent of the legislature governs the construction of the language used in its acts. Where it is plainly perceivable that a particular intention, though not precisely expressed, must have been in the mind of the legislature, that intention will be carried out and made to control the strict letter, although such construction may seem contrary to the ordinary meaning of the letter of the statute. *Willimantic School Society* v. *Windham School Society*, 14 Conn., 467; *Bishop* v. *Vose*, 27 id., 9; *Staniels* v. *Raymond*, 4 Cush., 316; *Somerset* v. *Dighton*, 12 Mass., 383. The words "chapter second, title three," in the act in question, may therefore be safely regarded as inoperative, in pursuance of the well established maxim— "*Expressio eorum quae tacite insunt nihil operatur.*"

3. The argument that legislation which in one section should abolish an official board and in the next section should re-create the same official board is of no effect whatever and leaves the same membership in the board, whether sound or not, has no application to this case. The legislature did not merely re-create a board of commissioners for New Haven County, but went on to enact that the new commissioners were to be appointed by the General Assembly, and to provide for their appointment and to appoint them. It thus did not merely repeal the old law and re-enact a substitute, but, by proceeding under the law to appoint to the offices created by it, the legislature showed a clear intent to treat the new act as a substituted act and not as a mere renewal of the old one; and the whole question in any such case is, what did the legislature intend? Did it, by enacting a new law in the place of the old one, mean merely to keep the old law in force, or did it mean to have the substituted law the one in force. Their proceeding to make appointments under the new law shows clearly the latter intent.

GRANGER, J. The first question made in this case is,

whether the act of March 22d, 1877, is constitutional. It is claimed by the relators that the act is unconstitutional and void, on the ground that the legislature in removing the relators assumed the powers of the judicial department of the state government. We think this claim is not well founded. It nowhere appears upon the record that the legislature assumed any judicial functions; no charges were preferred against the relators, so far as this record discloses, and no trial was had, and there was nothing upon which the legislature could have acted in a judicial capacity. The legislature acted only in the discharge of its legislative functions in passing the act under consideration. That it had the constitutional right to pass the act we think is beyond question, upon the principle that it is incident to the power of a legislature to repeal all prior laws, except those which are in the nature of grants.

The relators' counsel also claim that Birdsey and Lake had such a vested title to the office that they could not be removed; but we think they confess away this claim when they say in their brief that "the legislature has a right to repeal the law, as they are the judges whether a law is necessary, and if the law falls the office falls with it;" but they claim that the law under which the relators were appointed was not repealed by the act under consideration, and that the office of county commissioners for New Haven County was not thereby abolished. The counsel for the defendants claim the contrary, and say in their brief that "for some reason the legislature was dissatisfied with Lake and Birdsey as county commissioners for New Haven County, though their terms of office had not expired, and abolished the board of county commissioners as it stood March 22d, 1877; and that this action put an end to their official life." And again they say: "Having legislated Lake and Birdsey out of office, the General Assembly proceeded by public act and resolution to provide for the appointment of, and to appoint, other suitable persons to act as county commissioners for New Haven County, with all the powers incident to that office." If the law under which the relators were appointed was in fact repealed and the office

actually abolished, then the relators could not successfully claim that they were county commissioners, for, as we have already seen, the legislature may repeal any law, with the exception before stated, passed by its predecessors, and may abolish any office created by legislative enactment.

But has the legislature by the passage of this act accomplished either of the above results? This is the vital question in the case, and to determine it we are to look at the act itself, in order to ascertain what effect is to be given to it. In the first place, in looking at this act, we observe that it is quite peculiar in its form, and we are confident that acts of this character are unusual in this state. We recall no instance where the legislature prior to this act has undertaken to legislate one board of officers out of office and another board in, before the expiration of the term of office, and we think there is no case in our own reports in which such an act has been brought to the attention of this court. The first section repeals "so much of section one, chapter two, title three, of the General Statutes of 1875, as provides that county commissioners shall be appointed for New Haven County," and abolishes the board of county commissioners for New Haven County. The second section creates a board of commissioners, the language of this section being, "A board of commissioners for New Haven County is *hereby created*, to be appointed by the General Assembly, and said board shall have all the powers and perform all the duties provided by chapter two, title three, of the General Statutes for county commissioners." In regard to the last clause of the second section, neither party claims that the powers and duties of the defendants were intended to be limited to those powers and duties specified in the section referred to in the General Statutes. The relators allege that the respondents have assumed *all* the duties of county commissioners, that they have taken possession of the office, property, books, &c., of the county, and the respondents in their plea allege and admit in substance the same, and claim a right to do so under the act in question. Have these words then in this second section, "said board shall have all the powers and perform all the

duties provided by chapter two, title three, of the General Statutes for county commissioners," no significance and no meaning? It would seem that they must have been used for some purpose, and we think the purpose was to revive the force of the statute, section 1, chapter two, title three, so far as it related to commissioners for New Haven County.

We have then this condition of things—an act of the legislature repeals by its terms a certain section of the General Statutes and abolishes a board of officers appointed under it, and the same act creates precisely the same board and clothes them with the same powers and duties enumerated in the section repealed. Can this be done? We think not. The act in question contains the elements of its own destruction. It attempts to kill and make alive at the same instant, an impossibility. There must be some appreciable space of time between the repealing act and the re-enactment of the same act. In this case not a second intervened, and there was never a moment when the relators were out of office, or when the office of county commissioners for New Haven County was abolished.

For these reasons we advise the Superior Court to render judgment for the State.

In this opinion the other judges concurred.