THE STATE OF DELAWARE, upon the relation of Joseph Donald Craven, Attorney-General, Plaintiff, v. BENJAMIN F. SHAW, II, J. GORDON SMITH, FRANCIS GEBHART, THURMAN ADAMS, CAREY SAPP, purporting to constitute the State Highway Department of the State of Delaware, and

ROBERT D. THOMPSON, EDWARD KELLY, THURMAN ADAMS, SAMUEL J. FOX and BENJAMIN ABLEMAN, purporting to be members of the State Highway Department of the State of Delaware as allegedly created by Senate Bill No. 524, Defendants.

THE STATE OF DELAWARE, upon the relation of Joseph Donald Craven, Attorney-General, Plaintiff, v. JOHN M. CONWAY, BRINTON T. HOLLOWAY, I. LEROY SMITH, BURTON S. HEAL and J. EDWARD TRUITT, purporting to constitute The Delaware Alcoholic Beverage Control Commission, Defendants.

THE STATE OF DELAWARE, upon the relation of Joseph Donald Craven, Attorney-General, Plaintiff, v. SIGMUND SCHORR,

FRED HEINOLD, CARL J. SCOTT, LESLIE FORD, WOODROW WILSON STANLEY, WILLIAM MCCLAFFERTY, MARTIN DEVINE, JOSEPH GRABOWSKI, OSCAR SEWEL, WILLIAM SAVERY, GEORGE SYLVESTER, purporting to constitute the Department of Elections for New Castle County, Defendants.

(*Argued*: *September* 10, 1956.)

(*Decided*: *October* 17, 1956.)

HERRMANN, J., sitting.

*E. N. Carpenter, II, Januar D. Bove, Jr.,* and *Clarence W. Taylor* for the Plaintiff.

*S. Samuel Arsht* and *James M. Tunnell, Jr.,* for the appearing defendants in No. 56, Civil Action, 1956.

*George Gray Thouron* for the defendants in No. 55, Civil Action, 1956.

*Ernest S. Wilson, Jr.,* for the appearing defendants in No. 54, Civil Action, 1956.

Superior Court for New Castle County, Nos. 56, 55 and 54, Civil Action, 1956.

HERRMANN, J.:

These three *quo warranto* proceedings have been instituted to try the title of the defendants to certain public offices. Their title to office is challenged on the ground that the Statutes by which they were appointed are unconstitutional and invalid.

The case of *State ex rel. Craven, Atty. Gen. v. Shaw,* is intended to test the title of the defendants named therein to office as members of the State Highway Department to which they were appointed by Ch. 548 of 50 *Laws of Delaware,* 17 *Del. C.* §§ 111, 114, 116, 118, 151. The case of State *ex rel. Craven, Atty. Gen. v. Conway,* was instituted to test the title of the defendants named therein to office as members of the Delaware Alcoholic Beverage Control Commission to which they were appointed by Ch. 547 of 50 *Laws of Delaware,* 4 *Del. C.* §§ 301, 304. The case of *State ex rel. Craven, Atty. Gen. v. Schorr,* was brought to test the title of the defendants named therein to office as members of the Department of Elections for New Castle County to which they were appointed by Ch. 545 of 50 *Laws of Delaware,* 15 *Del. C.* §§ 103, 109.

Since these are *quo warranto* proceedings to try title to public office, they are brought in the name of the Attorney General who must institute all such actions on behalf of the State. See *Marshall v. Hill,* 8 *Terry* 478, 93 *A.* 2d 524. The Attorney General is being represented in these proceedings by the attorneys for other members of the agencies involved who are not rival claimants for the offices claimed by the defendants and whose right to office is not being challenged. These proceedings were instituted upon the basis of allegations of the following persons who are referred to in the pleadings as relators:

In the Highway Department Case: Hugh R. Sharp, Jr., J. Draper Brown, Jr., Frank R. Grier and William P. Richardson.

In the Liquor Commission Case: George J. Schultz.

In the Election Department Case: Wayne C. Brewer, Robert A. Groves, Ambrose McAlevy, Leon H. Ryan, Harry E. Vincent, Robert L. Meli and Hannah S. Buckley.

Because of the common questions of law raised in these three cases, they were consolidated for briefing, argument and decision. The matters are before the Court on cross-motions for summary judgment and upon the defendants' motions to strike certain portions of the pleadings and affidavits.[1] The motions for summary judgment are based upon the pleadings and affidavits.

For the most part, the issues and the contentions of the parties are substantially the same in all three cases. Because of certain differences, however, each case will be discussed separately in the interest of clarity.

I.

The Highway Department Case.

In this case, the validity and constitutionality of Ch. 548 of Vol. 50 *Laws of Delaware* are challenged. By that Statute, the membership of the State Highway Department was raised from seven to twelve. The seven members who were in office on June 8, 1955[2] were continued in office until the expiration of their

---

[1]These proceedings are not to be confused with other cases instituted and argued in this Court in 1955. Those cases involved earlier Statutes (Chapters 268, 393 and 155 of 50 *Laws of Delaware*) which the Statutes here involved purport to repeal. All further proceedings in the 1955 cases were stayed upon stipulation of the parties when the Statutes here involved were enacted and they remain in *status quo* pending the outcome of the instant proceedings.

[2]On June 9, 1955, Ch. 268 of 50 *Laws of Delaware* became law. It provided for the abolition of the then existing State Highway Department and the creation of a new Department consisting of five members named in the Act. Ch. 268 was repealed by Ch. 548 and the Department created by Ch. 268 was thereby abolished. This explains the reference in Ch. 548 to the membership of the Department as of June 8, 1955.

terms and the five new members were named in the Statute by the Legislature. It was also specified that upon the expiration of the term of any member the Governor, by and with the consent of a majority of the Senate, would appoint a successor for a term of six years, no such appointment being "complete or effective unless and until the nominee has been confirmed by the Senate." It was also provided that in case of a vacancy for any reason other than expiration of term of office, the remaining members of the Department would fill such vacancy.

The validity of Ch. 548 is challenged upon several grounds:

1. *Colorable Legislation*

It is asserted that Ch. 548 should be set aside as being void because it is "colorable" legislation, *i. e.*, because it was motivated in bad faith by partisan political considerations on the part of certain members of the Legislature whose only purpose was to gain control of the State Highway Department for their party.

The affidavits filed in support of this contention will be stricken as being immaterial and irrelevant because, under the established law of this State, it is beyond the province of this Court to inquire into either legislative motive or legislative wisdom.

The power of our General Assembly "is broad and ample in its omnipotence as sovereignty itself, except in so far as it may be curtailed by constitutional restrictions express or necessarily implied." *Collison v. State ex rel. Green*, 9 *W. W. Harr.* 460, 468, 2 *A.* 2d 97, 100, 119 *A. L. R.* 1422. Thus, the Statute here involved must be held valid unless it is found to violate some constitutional restriction. There is no constitutional limitation governing legislative motive or legislative wisdom. Statutes otherwise valid and constitutional are not rendered invalid and unconstitutional by reason of the fact that legislators, voting for the passage thereof, have been influenced by political considerations.

On this subject, this Court has stated in *State v. Grier*, 4 Boyce 322, 88 A. 579, 582:

"* * * Indeed, we have no discretion, and but one duty, which is to declare the law as we understand it. We do not make the law and have no power or right to unmake it if it was constitutionally enacted. Under our system of government the Legislature is the sole judge of what are proper subjects of legislation, subject only to constitutional limitations; and the necessity and wisdom of any particular act cannot be reviewed by the court—it is exclusively for the law-making body to decide.

"What we desire to make plain is this: That the court in passing upon the validity of a statute has no discretion at all; it cannot say whether it was wise or unwise, necessary or unnecessary, proper or improper. With the wisdom, necessity or propriety of legislation we can have nothing whatever to do under our judicial oaths. The power or authority of the Legislature to pass the statute is the only question for the consideration of the court; and if the power is found to exist under the law, it absolutely controls the court. * * *"

Similarly, in *State ex rel. McVey v. Burris*, 4 *Penn.* 3, 49 *A.* 930, 931, involving a statute which abolished the office of state detective and recreated that office for another incumbent, this Court sitting in banc declared:

"* * * There is no evidence in this case that there was any lack of bona fides on the part of the legislature in passing these acts. The presumption of law is in favor of good faith. Even if there was a lack of bona fides on the part of the members of the legislature, what right would this court have to pass upon that subject, if what the legislature did was within its power? Whether it acted in good faith and for the best interests of the public is entirely between the members and their constituents, so long as they confine themselves within the limits of their authority. It is no function of this court to pass upon the motives of the legislature in the discharge of their duty. The legislature of each state represents the sovereignty of the people, and it may

pass any laws not inconsistent with the constitution of this state or of the United States. It is well settled that offices created by the legislature are entirely within legislative control; that the gift of such an office is not a contract. Unless there be some constitutional limitation, such offices may be modified, abridged, or abolished as the legislature may see fit. * * *"

In *Collison v. State ex rel. Green,* 9 *W. W. Harr.* 460, 2 *A.* 2d 97, 108, 119 *A. L. R.* 1422, which involved the removal and replacement by the Governor of all the members of the State Industrial Accident Board under statutory authorization, the Delaware Supreme Court stated:

"We are aware that in the judgment of many persons it is highly unwise for the legislature to create offices with an indefiniteness of tenure. We are not unsympathetic with that view. But it is the province of the legislature and not of the courts to pass upon matters of policy. The legislative hand is free except as the constitution restrains; and courts are bound by a most solemn sense of responsibility to sustain the legislative will in the appropriate field of its exercise, even though in the opinion of the judges as individuals the legislature had acted in an unwise manner."

The authorities cited by the opponents of the Statute involved situations in which public offices were abolished and the incumbents deposed by legislative action. See 67 *C. J. S., Officers,* § 10(b); 172 *A. L. R.* 1366 *et seq.; Mattia v. City of Newark,* 122 *N. J. L.* 557, 6 *A.* 2d 662; *State ex rel. Hammond v. Maxfield,* 103 *Utah* 1, 132 *P.* 2d 660; *State ex rel. Birdsey v. Baldwin,* 45 *Conn.* 134; *Suermann v. Hadley,* 327 *Pa.* 190, 193 *A.* 645; *Smith v. Sells,* 156 *Tenn.* 539, 3 *S. W.* 2d 660. These authorities are inapposite here not only because they are contrary to the established law of this State but also because Ch. 548 does not abolish any office nor does it depose any incumbent.

It is concluded, therefore, that Ch. 548 may not be declared invalid on the ground that it is "colorable" legislation.

## 2. *Title and Duplicity of Subject Matter*

It is asserted that Ch. 548 is unconstitutional because its title is defective. The title of the Statute is as follows:

"An Act Pertaining To The State Highway Department And Providing For Its Reorganization, Composition And Membership, For The Ratification Of The Acts Of The State Highway Department Created By Chapter 268 Of Volume 50 Laws Of Delaware, Repealing Said Chapter 268 Of Volume 50 Laws Of Delaware And Abolishing The Offices Therein Created, And Amending Chapter 1 Of Title 17 Of The Delaware Code."

Art. II, Sec. 16 of the *Delaware Constitution, Del. C. Ann.* provides as follows:

"No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

It is contended that Ch. 548 violates the above constitutional provision because the title fails to express its subject in that it fails to disclose that specified individuals are therein appointed to the Department and that the Department, as it existed on June 8, 1955, was reestablished and continued. It is contended also that Ch. 548 is fatally defective because it embraces more than one subject, *i. e.*, (1) it creates new offices and (2) it fills those offices.

The purpose and intent of *Del. Const.* art. II, Sec. 16 has had the attention of our Courts upon numerous occasions. This provision of our Constitution was intended to prevent "hodge-podge" or "log-rolling" legislation, to fairly apprise the public of the subject matter of proposed legislation and to prevent deception of members of the Legislature and members of the public. It has been held that this constitutional provision should be liberally construed so as not to defeat or embarrass legislation where there has been substantial compliance with its requirements. Wherever possible, this constitutional provision

should be construed so as to uphold legislation rather than to destroy it. It is settled that the title of a statute need not be an index of the details of the Bill or a synopsis or table of its contents; and there is compliance with this constitutional provision if the title of the statute is so framed as to give reasonable notice to any one interested such as would lead him to make inquiry into the body of the Bill if he so desired. See *State ex rel. Davis v. Woolley*, 8 *Terry* 434, 92 *A.* 2d 600; *Klein v. National Pressure Cooker Co.*, 31 *Del. Ch.* 459, 64 *A.* 2d 529; *State v. Lyons*, 1 *Terry* 77, 5 *A.* 2d 495; *In re Cypress Farms Ditch*, 7 *W. W. Harr.* 71, 180 *A.* 536; *State v. Fountain*, 6 *Penn.* 520, 69 *A.* 926; *State ex rel. Morford v. Emerson*, 1 *Terry* 328, 10 *A.* 2d 515, 522; *Monacelli v. Grimes*, 9 *Terry* 122, 99 *A.* 2d 255.

■ I have studied the title of Ch. 548 in the light of these well-established principles and I have concluded that the title of this Statute does not offend against *Del. Const.* art. II, Sec. 16. I am unable to agree with the contention that this Statute is fatally defective because its title, purporting to detail its contents, failed to include a reference to the individuals appointed in the Bill and a reference to the fact that the original Department was being "reestablished and continued." I do not consider this conclusion to be in conflict with *State ex rel. Morford v. Emerson*, 1 *Terry* 233, 8 *A.* 2d 154. Indeed, the Court there stated that a statute was not objectionable which appointed new members to the Highway Department even though its title referred merely to an increase in membership.

It is my opinion that the title of this Act is sufficiently broad to permit inclusion in the Act of the two provisions here under consideration. It is my opinion, too, that the title of this Act gave to both legislators and members of the public adequate and reasonable notice of the subject matter of the Act so as to invite inquiry into the body of the Bill by all persons interested enough to do so.

I consider to be without merit the contention that this Statute is invalid because it embraces more than one subject.

Accordingly, Ch. 548 may not be declared unconstitutional upon the ground that it violates *Del. Const.* art II, Sec. 16.

3. *Legislative Journals*

It is contended that this Statute is invalid and unconstitutional because of violation of *Del. Const.* art II, Sec. 10 providing that "Each House shall keep a journal of its proceedings * * *" and because of violation of *Del. Const.* art III, Sec. 18 which provides:

"Every bill which shall have passed both Houses of the General Assembly shall, before it becomes law, be presented to the Governor; if he approve, he shall sign it; but if he shall not approve, he shall return it with his objections to the House in which it shall have originated, which House shall enter the objections at large on the journal and proceed to reconsider it. * * * In all such cases the votes of both Houses shall be determined by yeas and nays, and the names of the members voting for and against the bill shall be entered on the journal of each House respectively. * * *"

There appears to be no genuine issue as to any of the following facts: The legislative clerks recorded in longhand on separate, unbound sheets of paper the proceedings in each House as they occurred. Following adjournment of each daily session and before the commencement of the next legislative day, the journal was compiled in its final form, *i. e.*, in the form in which it would be printed, bound and published and in the form that has been in use by the Delaware Legislature for the past half century. On the following legislative day, the journal of the preceding day was read and approved. In both Houses, the names of members voting for and against each Bill and objections of the Governor upon a veto were entered upon the journal. The journal sheets for each legislative day are stapled together and kept in separate envelopes until the end of the session. Provision has been made by the Legislature in the usual way for printing, binding and publishing the journals of each

House, based upon the said record of its proceedings, immediately after the adjournment of the current session.

■ The constitutional requirement that a journal shall be kept in each House of the Legislature prescribes neither the form thereof nor the manner of making entries. While loose-leaf records may be said to be less efficient and less secure than other methods of record-keeping that may have been adopted by the Legislature pending the printing and binding of the journals, it does not appear that the journal system, that prevailed in each House of the Legislature at the time of the enactment of Ch. 548, violated any restriction or requirement of *Del. Const.* art. II, Sec. 10 or art. III, Sec. 18, either expressed or necessarily implied. The case of *Montgomery Beer Bottling Works v. Gaston,* 126 *Ala.* 425, 28 *So.* 497, 51 *L. R. A.* 396, relied upon by the opponents of the Statute, is clearly distinguishable upon its facts.

Accordingly, Ch. 548 may not be declared unconstitutional upon this ground.

4. *Infringement upon Executive Powers*

It is contended that Ch. 548 is invalid and unconstitutional because, by naming appointees therein, the Legislature encroached upon the powers of the Governor in violation of *Del. Const.* art III, Sec. 9 which provides:

"He [the Governor] shall have power, unless herein otherwise provided, to appoint, by and with the consent of the majority of all of the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint. * *"

It is argued that the power of appointment to public office is intrinsically an executive power which cannot be usurped by the Legislature.

The law of this State is settled on this subject insofar as this Court is concerned.

In 1939, our Legislature followed a course of action in connection with the State Highway Department similar to that reflected in Ch. 548. There, too, the Courts were called upon to inquire into the scope of the legislative power *vis a vis* the power of the Executive regarding appointments to public office. The case of *State ex rel. Morford v. Emerson*, 1 *Terry* 233, 8 *A.* 2d 154, involved an Act of the Legislature, 42 *Del. Laws*, Ch. 172, which removed the Governor as a member of the State Highway Department and enlarged the Department from five to seven members. In that Statute, the Legislature named the three new members of the Department, one to replace the Governor and the other two to make up the enlarged Department. The four members theretofore appointed by the Governor and then serving were continued in office until the expiration of their terms.

In the *Emerson* case, just as in the instant case, it was contended that the Legislature did not have the power to name the new members of the enlarged Highway Department and that, under our Constitution, such appointments must be made by the Governor. After an exhaustive discussion of the provisions of our State Constitutions from 1776 on and after careful consideration of the fundamental philospohies of government and of the division of powers concept, this Court stated, 8 *A.* 2d 156-158:

"* * * There is no inherent right in the Executive to make appointments which the Constitution may not alter or remove entirely, * * *.

* * * * * *

"The Constitutional provisions for the Governor to make appointments is a grant of power. It is not a limitation on the power to the Governor, which power would be unlimited except for the provision. Being a grant of power, and to that extent a limitation on the people acting through their representatives, let us see in what cases the Governor is expressly authorized

to appoint to office. With the consent of the Senate the Governor is expressly given power to appoint 'such officers as he is or may be authorized by this Constitution or by law to appoint.'

"The right of the Governor to appoint to Constitutional offices is the exact measure of his authority to appoint to statutory offices—*viz.*: 'as he is or may be authorized * * * to appoint.' If, as to Constitutional offices, the right of the Governor to make appointments exists by reason of Constitutional authority to appoint and not by reason of any inherent power existing in the Executive, so it is as to statutory offices—for the language is precisely the same. For the power to exist we must seek and find some authority—constitutional or statutory. If there exists no express or implied constitutional or statutory authority to appoint, then no right to appoint exists. * * *

"We see nothing in the Constitution which prevents the Legislature from creating a statutory Commission or Board and naming the members thereof. If that were true, then we see no reason why an existing statutory Board may not be amended by increasing the membership, such new members being designated in the Amendatory Act."

It is contended that the statements in the *Emerson* case, dealing with the appointive powers of the Legislature, are not binding upon this Court because they were *dicta, i.e.,* they were not necessary to the decision of the ultimate issue upon which disposition of the case was made. While the statements above quoted were in the category of *dicta* when made, they were raised from that status in the second *Emerson* case.

The question here involved was squarely presented to and decided by this Court in the second phase of the litigation which arose out of the Act of 1939 above mentioned. In *State ex rel. Morford v. Emerson*, 1 *Terry* 328, 10 *A.* 2d 515, 522, this Court stated:

"We now come to the third and last question presented by the Relator, *vis.*:

" 'as to whether or not the Act is invalid as being an encroachment upon the executive powers of the State which are vested by the Constitution in the Governor.'

"The Court, as presently constituted, considered this question in *State ex rel Morford v. Emerson*, [1 *Terry* 233] 8 *A.* 2d 154. We adhere to the views there expressed and shall not unduly enlarge upon them."

This second *Emerson* case went to the Delaware Supreme Court and in *State ex rel. Morford v. Emerson*, 1 *Terry* 496, 14 *A.* 2d 378, the Supreme Court affirmed the judgment of this Court in a *per curiam* Opinion in which it stated that "all of the issues involved in the case were so thoroughly considered in the opinion" of this Court "that it seems unnecessary to add anything to what has already been said."

Moreover, in *State ex rel. James v. Schorr*, 1948, 6 *Terry* 18, 65 *A.* 2d 810, 813, our Supreme Court cited with approval the above quoted language of this Court in the first *Emerson* case, Chief Justice Richards there stating:

"We agree with the position taken by the Court in the *Emerson* case, that the Legislature can pass an act creating a state agency or board and name the members thereof in the act; and we are of the opinion, that the Legislature can authorize the State Highway Department which is a State Agency to make certain appointments, * * *."

In view of this case history and background, it cannot be said that the language of this Court in the first *Emerson* case is pure *dicta*, not binding upon this Court and not accurately reflecting the law of this State upon the question of the power of the Legislature to make appointments to public office. I think that the instant case is controlled by the principles which were announced in the first *Emerson* case and which have been subsequently endorsed by the Supreme Court of Delaware.

I have considered the argument that the *Emerson* case is not determinative because it does not appear that the assertion

of "colorable" legislation was made in that case. In view of the foregoing discussion on the subject of "colorable" legislation, I find no merit in this attempt to distinguish the *Emerson* case.

Three collateral arguments are made in this area of the case. It is urged that the Legislature may not constitutionally subdivide the appointing power by suspending the Governor's appointing power for a time and then reinstating it after the expiration of appointments made by the Legislature. It is urged, also, that Ch. 548 violates *Del. Const.* art. III, Sec. 9 which provides:

"Unless herein otherwise provided, confirmation by the Senate of officers appointed by the Governor shall be required only where the salary, fees and emoluments of office shall exceed the sum of five hundred dollars annually."

Finally, it is argued that there is an unconstitutional infringement of the executive power in that remaining members of the Highway Department are given the power to fill vacancies caused by any reason other than expiration of term.

These collateral arguments do not survive an application of the principles stated in the *Emerson* cases. Since the Legislature may withhold from the Governor *in toto* the power to make appointments to these statutory offices, I think it follows that the Legislature may grant to him a partial, limited power to make such appointments (1) to be exercised *in futuro* after the expiration of terms of office filled by the Legislature, or (2) to be exercised by and with the consent of the Senate. The position that the power to fill vacancies may not be delegated to remaining members of the Department is untenable in this Court in view of the Supreme Court's statement on this subject in *State ex rel. James v. Schorr*, 6 *Terry* 18, 65 *A*. 2d 810, 813, above quoted.

In any event, this is not a proper proceeding in which to test the constitutionality of the severable provisions of Ch. 548 pertaining to future appointments of successors to the

defendants. The constitutionality of a provision of a statute may be attacked only by one who is adversely affected by its operation presently and directly. It is generally agreed that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the Constitution. See *Garden Court Apartments v. Hartnett*, 6 *Terry* 1, 65 *A.* 2d 231; *Carpenter v. Du Pont*, 31 *Del. Ch.* 80, 66 *A.* 2d 602; 16 *C. J. S.*, Constitutional Law, § 76; 11 *Am. Jur.* "Constitutional Law" § 111. Moreover, in a *quo warranto* proceeding such as this, the scope of inquiry and decision is limited to a determination of the present right and title of the defendants to the offices they claim. See *State ex rel. Wolcott v. Kuhns*, 4 *Boyce* 416, 89 *A.* 1; 74 *C. J. S., Quo Warranto*, § 7. Accordingly, the constitutionality of severable provisions of the Statute which pertain solely to future appointments of successors to the defendants, and not to the present right to office of the defendants themselves, is not properly before the Court for decision in these proceedings.

Finally, in this connection, the cardinal rule should be noted that every statute must be held valid and constitutional if there is any reasonable basis upon which to sustain it. As was stated by Chief Justice Marshall in *Fletcher v. Peck*, 6 *Cranch* 87, 3 *L. Ed.* 162, "whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case," and it is "not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility." Along the same lines, the Delaware Supreme Court declared in *Collison v. State ex rel. Green*, 9 *W. W. Harr.* 460, 2 *A.* 2d 97, 107, 119 *A. L. R.* 1422:

"* * * As a corollary of the proposition that the legislative power is never to be supposed to intend to violate the constitutional restraints which are laid upon it, it is the universal

rule that judges are under a duty, out of respect to a department of the government which is coordinate with the one they administer, to strive as hard as reason and conscience will permit, to select between two possible interpretations of a statute that one which will bring the statute in harmony with the fundamental law of the constitution and reject that one which will result in its destruction. The courts of this State have frequently declared themselves to be bound by that duty. \* \* \*"

It has been said that "to doubt is to be resolved in favor of the constitutionality of the act." Sharswood, C. J., in *Commonwealth ex rel. Wolfe v. Butler*, 99 *Pa.* 535.

 I am of the opinion that the Legislature has not exceeded its appointive powers and that Ch. 548 may not be declared invalid and unconstitutional upon that ground.

### 5. *Miscellaneous contentions*

There are several grounds of attack upon the constitutionality of Ch. 548 which are so tenuous as to merit little more than mention here to indicate that they have had the Court's attention:

 a) The contention that debate on the Bill was limited. There is no constitutional guaranty or restriction regarding the extent of legislative debate.

b) The contention that the Act deprives members of the Highway Department, appointed by the Governor, of the same status and kind of office as that to which they were appointed. The *Emerson* cases settle the law on this point.

c) The contention that two persons named by the Legislature in the repealed Ch. 268, not members appointed by the Governor, were not renamed by the Legislature in Ch. 548.

d) The contention that the Legislature improperly usurped the jurisdiction of the judiciary by repealing Ch. 268 while its validity was under consideration by this Court. As has been noted, all proceedings in the case involving Ch. 268 have been

stayed by the Court with consent of counsel. The Court may proceed with its examination of the repealed Statute whenever it may appear to the Court that the issues in the earlier case are not moot.

e) The contention that since Ch. 268 was invalid, Ch. 548 may not ratify and validate actions of the Department created by Ch. 268. Even if we assume the soundness of this contention and the unconstitutionality of the severable ratification provision, the remainder of the Statute pertaining to the defendants' present rights to office would remain in full force and effect.

Accordingly, it is held that this Statute may not be declared invalid on any of these grounds.

Having considered all of the grounds and contentions urged in opposition to the validity of Ch. 548 and finding no provision of the Delaware Constitution violated by that Statute, it is my conclusion that Ch. 548 is valid and constitutional and that the defendants in this proceeding are entitled to hold the offices in the State Highway Department to which they were appointed in that Statute.

The defendants' motion for summary judgment and motion to strike will be granted in this case.

## II.

### The Liquor Commission Case.

The validity of Ch. 547 of Vol. 50 *Laws of Delaware* is challenged in this proceeding. By that Statute, the person who had been the sole member of the Alcoholic Beverage Control Commission on June 29, 1955[3] was continued in office until the

---

[3]On June 30, 1955, the Legislature enacted Ch. 393 of Vol. 50 *Laws of Delaware*. This Act abolished the existing Liquor Commission and created a new Commission consisting of five members, all of whom were named in the Act. The incumbent was not one of those named. Ch. 547 repealed Ch. 393 *ab initio* and, therefore, reference is made in Ch. 547 to the Commission as it existed on June 29, 1955.

expiration of his term and the Commission was enlarged to five members. The four new members were named by the Legislature in the Statute.

The validity of Ch. 547 is attacked upon substantially the same grounds as those urged and discussed above in connection with the Highway Department Statute. The conclusions hereinabove stated relative to the Highway Department Statute dispose of all contentions made in connection with Ch. 547, without need for further discussion, except as follows:

1. *Title*

It is asserted that Ch. 547 violates *Del. Const.* art II, Sec. 16 because its title failed to express its subject in that it did not disclose (a) that specified individuals were appointed to the Commission, and (b) that the Commission existing as of June 29, 1955 was reestablished and continued.

The title of Ch. 547 reads as follows:

"An Act Pertaining To Alcoholic Liquors And Providing For the Reorganization, Composition, Membership And Powers Of The Commission Called The 'Delaware Alcoholic Beverage Control Commission', For The Ratification Of The Acts Of The Commission Created By Chapter 393 Of Volume 50 Laws Of Delaware, Repealing Said Chapter 393 Of Volume 50 Laws Of Delaware And Abolishing The Offices Therein Created, And Amending Chapter 3 Of Title 4 Of The Delaware Code."

Upon the authorities and for the reasons stated above relative to Ch. 548, I am of the opinion that the title of Ch. 547 does not violate art. II, Sec. 16 of our Constitution.

Accordingly, this Statute may not be declared unconstitutional upon this ground.

2. *Extension of Term of Office*

Art. XV, Sec. 4 of the *Delaware Constitution* provides:

"No law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment."

It is contended that Ch. 547 is a nullity in that it violates the above constitutional provision because it grants to the four new members named therein longer terms of office than they were granted in the repealed Ch. 393. In the alternative, it is contended that the appointment of these four men is ineffective for the reason stated. The opponents of the Statute rely upon *State ex rel. McVey v. Burris*, 4 *Penn.* 3, 49 *A.* 930; *Du Pont v. Green*, 8 *W. W. Harr.* 566, 195 *A.* 273, 114 *A. L. R.* 1184; *State ex rel. Biggs v. Corley*, 6 *W. W. Harr.* 135, 172 *A.* 415; *State ex rel. Green v. Collison*, 9 *W. W. Harr.* 245, 197 *A.* 836.

While the above cited cases have some bearing upon the question, I am of the opinion that the issue here presented must be decided, insofar as this Court is concerned, in accordance with *State ex rel. Green v. Isaacs*, 6 *W. W. Harr.* 110, 171 *A.* 627. In that case, involving the office of Sussex County Treasurer, this Court held that that office was not within the purview of the constitutional provision here invoked because the office was statutory rather than constitutional. Since the offices here involved are statutory and not constitutional, it follows from the *Isaacs* case that these offices are not controlled by *Del. Const.* art XV, Sec. 4.

There appears to be confusion in our decisions on this question. Since the *Isaacs* case entailed the most direct and positive consideration of the question, however, the statements in that case are found to be more compelling than the *dictum* in the cases to which attention is invited by the opponents of the Statute. The *Isaacs* case is considered to be binding upon this Court until such time as it may be rejected by the Supreme Court.

Accordingly, it is held that Ch. 547 may not be declared unconstitutional upon this ground.

Having examined all of the grounds and contentions urged in opposition to the validity of Ch. 547 and finding no provision

of the Delaware Constitution violated by that Statute, it is my conclusion that Ch. 547 is valid and constitutional and that the defendants in this proceeding are entitled to hold the offices on the Delaware Alcoholic Beverage Control Commission to which they were appointed in that Statute.

The defendants' motion for summary judgment and motion to strike will be granted in this case.

## III.

### The Election Department Case.

In this proceeding, the validity of Ch. 545 of Vol. 50 *Laws of Delaware* is challenged. By that Act, the ten members of the Department of Elections for New Castle County, who had previously been appointed by the Governor,[4] were continued in office until the expiration of their terms and the Department was enlarged to seventeen members. The seven new members were named by the Legislature in the Act.

The constitutionality of this Statute is attacked upon substantially the same grounds as those urged and discussed above in connection with the Highway Department Statute and the Liquor Commission Statute. The conclusions hereinabove stated relative to those Acts dispose of all contentions made in connection with Ch. 545, without need for further discussion, except as follows:

1. *Title*

It is asserted that Ch. 545 violates *Del. Const.* art II, Sec. 16 because its title fails to express its subject in that it does not disclose that the original Department of Elections is reestablished and in that it fails to disclose that the original members of the Department, appointed by the Governor, were continued as members for the balance of their terms.

---

[4] Ch. 155 of 50 *Laws of Delaware* abolished the Department of Elections for New Castle County as it then existed and established a new Department consisting of eleven members. All eleven members were named in the Act. Ch. 545, here under consideration, repealed Ch. 155 and reestablished and restored the Department as it existed prior to Ch. 155.

The title of this Act reads as follows:

"An Act To Repeal The Act Of May 18, 1955, Entitled 'An Act Amending Chapter 1, Title 15, Of The Delaware Code By Abolishing The Present Department Of Elections For New Castle County And Creating A New Department Of Elections For New Castle County', Which Act Was Denominated Senate Bill No. 255, As Amended; To Ratify The Acts Of the Board Of Elections For New Castle County Appointed Pursuant To The Act of May 18, 1955, Aforesaid And To Amend Chapter 1, Title 15 Of The Delaware Code By Increasing The Membership Of The Department Of Elections For New Castle County And Appointing Seven Persons To Fill The Vacancies Thereby Created And Presently Existing And To Further Amend Said Chapter 1, Title 15 Of The Delaware Code By Changing The Organization Date Of The Department."

Upon the authorities and for the reasons stated above in connection with Ch. 548, I am of the opinion that the title of Ch. 545 does not violate *Del. Const.* art. II, Sec. 16.

Therefore, Ch. 545 may not be declared unconstitutional upon this ground.

2. *Death of a Member.*

It is contended that Ch. 545 is a nullity because one of the persons named therein died before final passage of the Statute. This argument does not merit discussion.

Having examined all of the grounds and contentions urged in opposition to the validity of Ch. 545 and finding no provision of the Delaware Constitution violated by that Statute, it is my conclusion that Ch. 545 is valid and constitutional and that the defendants in this proceeding are entitled to hold the offices in the Department of Elections for New Castle County to which they were appointed in that Statute.

The defendants' motion for summary judgment and motion to strike will be granted in this case.

An Order in each of these proceedings, in conformity with this Opinion, may be submitted by the defendants on notice.