**Henry E. I. duPONT, Plaintiff,**

**v.**

**The DIRECTOR OF the DIVISION OF REVENUE OF the DEPARTMENT OF FINANCE of the State of Delaware, and the Secretary of the Department of Finance of the State of Delaware, Defendants.**

Superior Court of Delaware,
New Castle.

Nov. 13, 1974.

Thomas D. Whittington, Jr., Wilson & Russell, Wilmington, for plaintiff.

Marvin D. Forman, Deputy Atty. Gen., Dept. of Justice, Wilmington, for defendants.

## OPINION

WALSH, Judge.

Plaintiff, Henry E. I. duPont, a citizen and taxpayer of this State seeks the issuance of a Writ of Prohibition to prevent the collection of certain income taxes levied on behalf of the State of Delaware. The original defendant was designated as the "State Tax Commissioner of the State of Delaware" but since that office no longer exists, the Secretary of Finance has appeared to contest the issuance of the writ. The State has moved to dismiss the Complaint for failure to state a cause of action. Both parties agree that the motion poses a pure question of law concerning the validity of a legislative act and is dispositive of plaintiff's request for relief.

On July 5, 1973, during the first session of the 127th General Assembly, House Bill 546 was introduced in the House of Representatives. It bore the following title:

"An Act to Amend Section 1106, Title 30, Delaware Code, Relating to Modifications of Taxable Income"

The effect of the Act was to convert all capital gains income into ordinary income and thus subject such income to taxation at ordinary rates as opposed to capital gains rate as computed on Federal Income tax returns. The Act provided that it should become effective on the day after it was signed by the Governor. Under suspension of rules, House Bill 546, passed both houses of the General Assembly on the day of its introduction and was approved by the Governor on the following day. Thus it became effective on July 7, 1973.

Plaintiff asserts, and for purposes of its motion the State does not deny, that between July 7, 1973 and December 31, 1973, the balance of the tax year, he realized net capital gains in the amount of $8,206,044, which, if taxed as ordinary income, instead of capital gains, results in the imposition of an additional tax of $738,579.56. Fashioning a two-pronged attack on the constitutionality of House Bill 546, plaintiff argues that the legislative action is invalid because the title to the bill did not provide proper notice of its content and, secondly, the speed of its passage denied the public adequate opportunity to be informed and react. To the contrary, the State argues that both the form of the bill and the manner of its passage are constitutionally adequate.

Plaintiff's basic argument is premised upon Article II, Section 16 of the Delaware Constitution, Del.C.Ann., which provides:

"No bill or joint resolution except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title".

This provision is not unique to the Delaware Constitution but finds its counterpart in several states, including Pennsylvania, from which Section 16 was borrowed. See: Debates and Proceedings of the Constitutional Convention of 1899, Page 2643. The Courts of this State have many times construed and applied Section 16 as a test

of public notice. The provision contains two distinct strictures; a prohibition against multiple subjects and the requirement that the title of a bill express its subject matter. It is the latter feature which has most often been applied and the one plaintiff now invokes. He argues that the title is too broad to place a reasonable person on notice as to what is contained in the body of the bill. It is well settled, however, that Article II, Section 16 does not require the title to index the bill's contents or synopsis its contents. In re Opinion of Justices, Del.Supr., 4 Storey 366, 177 A.2d 205 (1962); Wilson v. State, Del.Supr., 264 A.2d 510 (1970). The end which is mandated by Section 16 is fair notice of the general subject matter such as to encourage further inquiry and thus preclude the passage of "sleeper" legislation.

Plaintiff argues that there were several alternative combinations of phrasing and language which could have been used to make title more specific and meaningful. This argument begs the question. The Constitution does not impose certain standards of phrasing or style; it simply requires that the title not be misleading. House Bill 546, consists of only two sections: Section 1 substitutes a new paragraph for an existing paragraph in Section 1106 of Title 30, while Section 2 establishes an effective date for the Act. The title of the bill refers specifically to the section and title of the Delaware Code sought to be amended and provides notice that the effect of the amendment is to modify taxable income. Under any reasonable construction of Article II, Section 16, this title fairly meets the constitutional test.

Plaintiff next argues that the prohibition of Article II, Section 16, must be applied subjectively, *i. e.*, the specificity of the title must be proportionate to the scope and impact of the legislation. In support of this position plaintiff places considerable reliance on In re Cypress Farms Ditch, Del.Super., 7 W.W.Harr. 71, 180 A. 536 (1935) a decision of the Superior Court declaring unconstitutional an act of the General Assembly which created a county drainage system and pre-empted a private system in effect for over a century. The holding in *Cypress Farms Ditch* must be read against its facts. The Court characterized the legislation as "revolutionary in character" which overturned a public policy "maintained by the statutes for generations" while the title "An Act with reference to Ditches and Drains in Sussex County" was "expressive of nothing certain or definite". The Court reasoned that the substantive features of the bill were so sweeping but its title so innocuous that it became deceptive and misleading. Such is obviously not the case here. To begin with, the scope of the legislation, while significant to those affected, is sharply limited. It deals with the taxability of capital gains and with no other subject. It creates no new class of taxpayer but simply changes the rate of taxation applicable to an existing class. Finally, this bill is an amendment of an existing statute and so recites in its title. An amendatory act is deemed to be in compliance with constitutional norms if the title of the amendatory act identifies the act of section to be amended and declares its purpose to amend. Sutherland Statutory Construction, § 22.08, pp. 119–120; Cf. Wilmington Trust Co. v. Highfield, Del.Supr., 4 W.W. Harr. 394, 153 A. 864 (1931).

The second basis for plaintiff's attack on the statute—the undue haste in enactment—is actually intertwined with his first argument of non-compliance with Article II, Section 16. He argues that the unusual speed of passage of House Bill 564 heightened the need for clear and complete notice to interested members of the public of the bill's contents. Thus, while the title may barely pass muster under Article II, Section 16, its brevity further handicapped those members of the public who desired to take a position on the bill.

Plaintiff's attack on the speed of the legislation assumes that the legislative process must afford opportunity for independent reaction from the public, apart from that provided by their elective representatives. It is, of course, questionable whether the normal processes of a representative form of government can ever accommodate the demands of a theoretical democracy, affording each citizen a direct, non-delegable voice in the workings of government. Yet, both the Federal and State Constitutional schemes confer upon the elected representatives of the people, as distinct from the people themselves, the responsibility to enact the laws. Under the separation of powers doctrine, the legislature alone is vested with legislative authority—a power it cannot divert, even to the people, unless constitutionally authorized to do so by initiative or referendum. Sutherland Statutory Construction, 4th Ed., Section 4.08. This is not to say that the legislative process should not be open and deliberate, in order that the public might observe the legislative process at work and make its views known. But to hold that delay is constitutionally inherent in the legislative process to insure public notice would be tantamount to making the Courts the arbiter of when and under what conditions the General Assembly may suspend its rules. While full notice to the public of pending legislation is highly desirable, in the final analysis, absent specific constitutional standards, the legislature must determine for itself the necessity to act with haste or deliberation. State v. Shaw, Del. Super., 11 Terry 193, 126 A.2d 542 (1956); affd., Del.Supr., 11 Terry 365, 131 A.2d 158 (1957). In this, as in other areas of disputed political judgment, the recourse is through the elective not the judicial process.

House Bill 546 is not constitutionally offensive either in the form of its presentation or the manner of its passage by the General Assembly. Accordingly, the petition for a writ of prohibition is denied.

It is so ordered.