**Henry E. I. duPONT, Plaintiff below, Appellant,**

**v.**

**The DIRECTOR OF the DIVISION OF REVENUE OF the DEPARTMENT OF FINANCE of the State of Delaware, and the Secretary of the Department of Finance of the State of Delaware, Defendants below, Appellees.**

Supreme Court of Delaware.

Argued June 18, 1975.

Decided Oct. 23, 1975.

Thomas D. Whittington, Jr., of Wilson & Russell, Wilmington, for plaintiff below, appellant.

Marvin D. Forman, Deputy Atty. Gen., Wilmington, for defendants below, appellees.

Before DUFFY, McNEILLY, JJ., and QUILLEN, Chancellor.

DUFFY, Justice.

Plaintiff appeals from a denial by the Superior Court of a petition for a Writ of Prohibition to prevent collection of certain State income taxes. 329 A.2d 158 (1974). We affirm.

## I

The tax in question, enacted as House Bill 546, was introduced in the House of Representatives in July 1973. See 59 Del. L., Ch. 151. Plaintiff attacks the constitutionality of the Act on the basis of inadequacy of its Title, which reads as follows:

> "An Act to Amend Section 1106, Title 30, Delaware Code, Relating to Modifications of Taxable Income."

The effect of the Act was to convert all capital gains into ordinary income and thereby subject them to taxation at ordinary rates. Under immediately prior law, which was built basically on the Federal scheme for taxing capital gains, certain de-deductions were permitted, thus lowering the effective rate on net gains. See 57 Del. L., Ch. 737 which enacted the "piggy-back" tax system for Delaware.

Plaintiff argues that the subject matter of the Bill was not adequately expressed in its Title as required by the Delaware Constitution, Art. 2, § 16, which provides:

> "No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

Our Courts have considered this provision in many cases and, by now, it is established law that the title of a bill need not be an index of its details nor a synopsis of the means by which the statutory objective is to be accomplished. *In Re Opinion of Justices,* Del.Supr., 4 Storey 366, 177 A.2d 205 (1962). But Section 16 does mandate fair and reasonable notice so that the people may have an opportunity to be heard, if they so desire. *Wilson v. State,* Del.Supr., 264 A.2d 510 (1970); *In Re Opinion of Justices,* supra; *Wilmington Trust Co. v. Highfield,* Del.Supr., 4 W.W.Harr. 394, 153 A. 864 (1931); *Koffler v. McBride,* Del.Ch., 283 A.2d 855 (1971); *Equitable Guarantee & Trust Co. v. Donahoe,* Del.Supr., 3 Pen. 191, 49 A. 372 (1901). In other words, the fundamental purpose is to prohibit "sleeper" legislation, that is, legislation passed without fair notice to the people. *Wilson v. State,* supra: *In Re Opinion of Justices,* supra. The issue, then, is whether the Title to H.B. 546 provided reasonable notice of its purpose. Plaintiff says that the Title did not put a reasonable person on notice as to contents and that it concealed and misled the public about the body of the Bill.

Section 16 requirements are met, in the words of Chief Justice Wolcott, "if the title is so framed as to apprise a reasonable person, interested in the subject matter of the legislation, sufficiently to lead him to an inquiry into the body of the bill." *Wilson v. State,* supra. If the act in question is amendatory of existing law, the title is adequate if it refers to the subject matter and to the section of the law to be amended (provided that the body of the act is germane to that law). *Wilmington Trust Co. v. Highfield,* supra; *Kennedy v. Truss,* Del.Super., 13 A.2d 431 (1940); *Baxter v. State,* Del.Super, 9 W.W.Harr. 223, 197 A. 678 (1938).

The Title to H.B. 546 identified the subject matter of the proposed legislation (taxable income), referred to a change thereof (by modifications) and referred specifically to the title and section of the Code to be amended (Title 30, § 1106). Under these circumstances it was sufficient to apprise a reasonable person interested in its subject to make an inquiry into the body of the Bill. *Wilson v. State,* supra; *Wilmington Trust Co. v. Highfield,* supra.

## II

■ Plaintiff's second argument, that the Title did not provide the specificity of notice required in light of the scope and impact of the legislation involved, can be disposed of on much the same basis.

Relying principally on *In Re Cypress Farms Ditch*, Del.Super, 7 W.W.Harr. 71, 180 A. 536 (1935), plaintiff asserts that the Court must apply a more strict standard of notice when a bill results in a dramatic change in a settled statutory scheme. Whatever the merits of this contention, it is not determinative here. In *Cypress Farms* the Court considered legislation which it described as "revolutionary in character," reversing a "public policy declared by statute over a century ago, and maintained steadily since." H.B. 546 was far more limited. It applied only to the taxability of capital gains by amending an existing statute which did the same thing. And the fact of amendment was stated in the Title. Unlike the century-old policy litigated in *Cypress Farms*, the effect of the present Act was to return generally to the taxation of capital gains on the basis followed from 1930 to 1970.

In our view, the Title to H.B. 546 provided the specificity of notice required to meet the constitutional standard.

## III

■ Finally, plaintiff contends that the speed with which H.B. 546 was passed underscores the need for notice to the public. He says that the timing was such that the people of the State were denied "their constitutionally protected right to have the title provide notice through normal channels of information which would have afforded them an opportunity to be heard on" the change in tax structure which the Bill proposed.

Plaintiff concedes, as he must, that this attempt to invalidate the legislation on a notice-deficiency concept is a first-impression effort, without case precedent in Delaware or elsewhere.

To put this argument into perspective, we review the legislative processing of the Bill and its impact on plaintiff.

H.B. 546 was introduced in the House on July 5, 1973 during the first session of the 127th General Assembly. Under separate suspensions of Rules, the Bill passed both Houses on the day it was introduced, and it was approved by the Governor on the following day. It thus became law on July 6, 1973, effective next day—three days after introduction.

Plaintiff says that for the period July 7, 1973 through December 31, 1973, he realized net capital gains of $8,206,044 which, when taxed as ordinary income, resulted in an additional tax on him of $738,579.56. And, as we have indicated, he argues that the speed with which the Bill was enacted deprived him of a reasonable opportunity to be heard on it.

There is merit to much of what plaintiff argues about the apparent race to get H.B. 546 enacted and its unhappy consequences for him and, implicitly, for other taxpayers. But we are not persuaded that he has made out a case for judicial relief. To put it another way, the Bill passes minimal constitutional standards when tested by the argument plaintiff has assembled.

Over the years the Delaware Courts have recognized the broad powers conferred on the General Assembly by the Constitution and, indeed, it has been said that the legislative power "is as broad and ample in its omnipotence as sovereignty itself," *Collison v. State*, Del.Supr., 9 W.W.Harr. 460, 2 A.2d 97 (1938); *State v. Shaw*, Del.Super., 11 Terry 193, 126 A.2d 542 (1956), aff'd, 11 Terry 365, 131 A.2d 158 (1957). The administration of that power by the Assembly is specifically permitted by Art. II, § 9 which provides that "[e]ach House may determine the rules of its proceedings, . . . and shall have all other powers necessary for a branch of the

Legislature of a free and independent State." In sum, broad substantive and procedural powers are vested in the General Assembly by our Constitution and, for that reason, Delaware Courts have traditionally deferred to the legislative body in matters involving the conduct of its business and the law-making process. But it does not follow that all legislative procedures are beyond judicial scrutiny.

We say this because the power of the Assembly, like that of the Governor and the Courts, is subject to constitutional restrictions, whether express or necessarily implied, *State v. Shaw,* supra, and, in an appropriate case, it is the duty of the Court to define such restrictions. Here, relief is not available to plaintiff but the General Assembly should take notice of the legal attack on its notice procedures, particularly in light of evolving judicial concepts.

\* \* \* \* \* \*

Affirmed.